SAMUEL CORNELL *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees.—(THE VILLAGE OF LISLE, Intervenor-Appellant.)

Second District No. 76-29

Opinion filed December 29, 1977.—Rehearing denied April 17, 1978.

Richard J. Hill and Walter P. Maksym, Jr., both of Wheaton, for appellants.

John J. Bowman, State's Attorney, of Wheaton, and Edward J. Vertovec, of Elmhurst, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an action for declaratory judgment and injunctive relief originally brought by 41 individual plaintiffs, joined by the Village of Lisle as a separate intervening plaintiff, against the County of Du Page and

Riley and Helen Riedy. The plaintiffs sought to have a special use permit ordinance, passed by the County to allow the construction of a miniature golf course, parking facilities and a lighted golf driving range upon a tract of land beneficially owned by the Riedys, declared void. The plaintiffs also sought to have a portion of the Du Page County Zoning Ordinance declared unconstitutional. Finally, the plaintiffs requested that a permanent injunction be entered to prevent the construction of the golf facility upon the Riedy's land. After a bench trial judgment was entered for the defendants and the complaints of both the Village of Lisle and the individual plaintiffs were dismissed. The various plaintiffs have appealed.

The property here involved is a tract of riverfront land located in unincorporated Du Page County but surrounded on the west, north and east by the Village of Lisle. This roughly rectangular tract is approximately 21 acres in size. The southern boundary of the tract runs for 520 feet along Maple Avenue, a major thoroughfare. Across Maple Avenue from the subject property are several single family residences as well as a sewage treatment plant operated by the Du Page County Public Works Department. Southwest of the property is Four Lakes Village, a multifamily residential planned unit development. The western boundary of the property runs for 1300 feet along the east bank of the East Branch of the Du Page River. Directly across the river is an area zoned for community business district (B-2) by the Village of Lisle, which is presently vacant except for a temporary sewage treatment plant. Northwest of the property, across the river, is vacant farmland and land reserved for the Lisle Senior High School. The northern boundary of the property runs for 725 feet parallel to the backyards of two private residences. To the north of the property beyond the above mentioned backyards is a presently vacant area zoned for multifamily use. The eastern boundary of the property runs for 1380 feet along the rear property lines of 11 single-family residences and two vacant lots. Further to the east of the subject property are generally extensive developments of single-family residences or schools, with the exception of an area located at the intersection of Route 53 and Maple Avenue, which has a rather extensive commercial use. This area of commercial development is within approximately 350 feet of the eastern boundary of the subject property. The property itself is zoned for single-family residential use (R-3) under the zoning ordinances of the County of Du Page. Approximately 80% of the tract of land at issue is located within the Du Page County floodplain and thus, under ordinary circumstances, cannot be used for construction purposes. Until recently the subject property was utilized as a sod farm.

Fourteen of the 21 homes owned by the plaintiffs to this action lie within a subdivision known as Riley Riedy's Lisle Villa Wooded Acres, of

which the subject property is Lot 34. These plaintiffs, or their predecessors in title, purchased their lots from the defendant Riedys. Included in some of the deeds to these lots was a covenant running with the land restricting the use of these lots to residential purposes, however, no such covenant appeared in the plat of subdivision or in the deed to the 21-acre Lot 34.

In April 1970 the Riedys filed a petition with the County of Du Page for the issuance of a special use permit to construct and operate a lighted golf driving range with 15 to 20 tees; a miniature golf course and parking facilities for 100 cars. The Village of Lisle filed a written protest to this petition with the county clerk. A hearing was held before the Zoning Board of Appeals of the County of Du Page on May 14, 1970. As a result, that body found that the proposed special use would depreciate adjacent residential property and deter the development of surrounding vacant property and recommended that the petition be denied. On April 23, 1971, the Board of Supervisors of Du Page County passed an ordinance disagreeing with the findings and recommendation of the Zoning Board of Appeals and granting the special use permit with restrictions. The restrictions imposed were as follows:

"(1) There shall be no buildings, structures or activity areas within 100 feet from the east residential property line.

(2) That the miniature golf course be moved to the westerly portion of the property.

(3) That there will be no development or structures within the flood plain area unless an area equal to that which is filled is provided on the site.

(4) The hours of operation shall be limited to 10:00 A.M. and 10:00 P.M., Monday through Thursday, and between 10:00 A.M. and 12 midnight on Friday, Saturday and Sunday."

As a consequence of that legislative action this suit was filed.

Four issues have been raised by the plaintiffs for our consideration on this appeal. First, whether the legislative procedure followed by the Du Page County Board of Supervisors was improper or illegal. Second, whether the Riedys are barred from utilizing the subject property for any use other than residential by their insertion of restrictive covenants into the deeds to certain lots in the same subdivision when those lots were sold by the Riedys to some of the plaintiffs or their predecessors in title. Third, whether the Du Page County Zoning Ordinance, which allows golf driving ranges as a special use in certain single-family zoning districts, is improper. Fourth, whether the special use permit involved here is arbitrary, capricious or unreasonable and without any relation to the public health, safety or welfare.

■■ We turn initially to the propriety of the legislative procedure

utilized in the passage of the special use permit ordinance here. We need not, however, consider the merits of the plaintiffs' contention in this regard. As we stated in the case of *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 137, 361 N.E.2d 832, 837:

> "It is fundamental that a party may not urge for the first time on appeal, and for the purposes of overturning the decision below, an argument or theory which was not presented to the trial court."

The record here fails to disclose any evidence that the plaintiffs presented argument concerning the propriety of the legislative procedure for the consideration of the trial court. As this matter has been raised and argued for the first time on appeal, we will not consider it.

We now turn to whether the defendant Riedys may be enjoined from utilizing the property involved herein for any purpose other than residential. The plaintiffs argue that since the deeds held by some of them contain covenants running with the land which restrict their property to residential purposes, the Riedys' land, which is part of the same subdivision, should also be restricted to that use. They further argue that Mr. Riedy's expressed hope to make the area one of the best residential areas in Lisle shows the establishment by the Riedys of a general plan or scheme to limit the entire subdivision, including the 21-acre subject property, to residential uses only.

■■■ The key to whether the Riedys may be enjoined from their proposed development on the grounds of an implied restrictive covenant is simply whether a general plan or scheme was instituted at the time of subdivision. The factors to be considered in determining the existence of the general plan include: whether the restrictions are included in all deeds to the subdivision; whether the restrictions have been previously violated; whether the burdens imposed are generally equal and for the mutual benefit and advantage of all lot owners; and whether notice of the restrictions is given in the recorded plat of subdivision. (*Henricks v. Bowles* (1958), 20 Ill. App. 2d 148, 155 N.E.2d 664; *Wallace v. Hoffman* (1949), 336 Ill. App. 545, 84 N.E.2d 654.) In regard to this issue the trial court made the following findings of fact:

> "1. That certain deeds of covenance by Riley Riedy and Helen Riedy did contain restrictions relative to the use of certain parcels of properties but that no deed contained restrictions relative to the entire subdivision; 2. That the plat of subdivision contained no restrictions relative to the use of the subject property for residential use; 3. That no evidence was presented to show that the Riedys established a general plan or a scheme that the entire subdivision, including the subject property, would remain residential in character; * * *.".

In addition to the findings of fact made by the trial court, our own examination of the record fails to reveal any evidence showing that the deed to the subject property (Lot 34) includes any restriction as to its use. The trial court found as a matter of law that no general plan or scheme existed and that an injunction would not lie. We agree with this conclusion.

■■■ As to the zoning ordinance of Du Page County, the plaintiffs argue that lighted golf driving ranges and miniature golf courses are incompatible, *per se*, with single-family housing areas, and that their allowance in such an area as a special use is illegitimate and improper. However, plaintiffs fail to cite any authority for the proposition that such facilities are incompatible with single-family residential use as a matter of law. Moreover, the technique of special use in zoning presupposes some sort of legislative determination of which uses of property are allowable but potentially inconsistent with normal use and thus subjecting them to special governmental supervision. (*Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 166 N.E.2d 601.) The legislative determination by the County of Du Page which defines driving ranges and miniature golf courses as potentially inconsistent with, but allowable in, a single-family zoning district is to be presumed valid unless the plaintiff shows clear and convincing evidence to the contrary. Where, from the facts presented, there may be a valid difference of opinion as to the reasonableness of a classification, the legislative judgment must prevail. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632.) We have examined the record herein and do not find that the plaintiffs have met their burden of showing the invalidity of the Du Page County Zoning Ordinance, as the evidence presented by them is conjectural and speculative at its best.

Finally, we turn to the major question of whether a special use permit was properly granted for the construction of the proposed facilities upon the particular plot of land at issue. The parties here agree that regulation of the uses of land is the province of the municipality having jurisdiction over that land, that the ordinances of the municipality in this regard are presumptively valid and that a plaintiff may overcome the presumption of validity only by clear and convincing evidence. *La Salle National Bank v. City of Evanston; Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 181 N.E.2d 96; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.

■■ We are faced here with the special use permit situation which necessitates a differing point of view than in the normal zoning controversy. The special use technique in zoning has long been approved in this State. (*Kotrich v. County of Du Page.*) It is also well settled that a

municipality is justified in denying a special use permit for land use otherwise qualified under the enabling ordinance only if that denial bears a real and substantial relation to the public health, safety, morals or general welfare. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454; *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 199 N.E.2d 797; *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago* (1962), 25 Ill. 2d 65, 182 N.E.2d 722.) It is only logical that the plaintiffs herein must show by clear and convincing evidence that real or substantial harm to the public health, safety, morals or welfare will be a natural result of the proposed use of the land in issue and that, therefore, the act of the county board in granting the permit was arbitrary and unreasonable.

It would serve little purpose here to recite in detail the evidence presented by the plaintiffs at trial. In sum, however, the plaintiffs presented an expert planner, a real estate broker and a real estate appraiser who testified that the area was residential in character and that the individual plaintiffs' properties would depreciate from 5-12% if the special use was constructed, depending upon their proximity to it. These experts were generally of the opinion that a golf driving range would be incompatible with a residential area, although on cross-examination the planner, Rolf Campbell, conceded that it was possible to design a range which would be compatible. In addition, the plaintiffs presented a golf professional who testified that the average golfer had a range in excess of 200 yards with a degree of error of up to 100 yards off line with the target, and that the trajectory of a golf shot could exceed 100 feet in height.

The defendants submitted testimony of their own experts to the effect that the property at issue had a very limited potential for development due to its location in the flood plain, that residential development there would be uneconomic and that the proposed special use is the best and highest use for the property. Defendants' expert planner, Mr. Efrussay, also testified that the area in question has a mixed pattern of uses.

■■ In its judgment the trial court held, as a matter of fact, that the surrounding and existing uses in the area are not uniform and established, and as a matter of law that the plaintiffs failed to show that the action of the County Board was arbitrary and unreasonable and without substantial relation to the public health, morals, safety and welfare. In addition, the court held that the evidence presented in the case accommodated a legitimate difference in opinion as to the special use permit ordinance enacted by the County Board, and that as a consequence the legislative intent must prevail. It is well established in cases of this nature that the trier of fact is in a superior position to that of a reviewing court and that the findings of the trial court will not be disturbed unless contrary to the manifest weight of the evidence. (*La Salle National Bank v. County of*

*Cook.*) From our review of this record we hold that the decision of the trial court as to matters of fact and law is not clearly contrary to the manifest weight of the evidence. Accordingly, we affirm.

Affirmed.

SEIDENFELD and NASH, JJ., concur.