THE COUNTY OF LAKE, Plaintiff-Appellee, *v.* THE FIRST NATIONAL BANK OF LAKE FOREST *et al.*, Defendants-Appellants.

Second District   No. 78-256

Opinion filed January 18, 1979.—Rehearing denied March 22, 1979.

694

Erwin W. Jentsch, of Elgin, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Gary Neddenriep, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiff, Lake County (the County), sought an injunction against the defendants in a four-count complaint which sought to prohibit various uses of a 45-acre tract of land located in an area zoned agricultural. The defendant First National Bank of Lake Forest holds legal title to the property in question as the trustee of a land trust for which Amalio N. Polidori is the beneficiary. (Hereinafter we will only refer to the defendant Polidori and not to the bank.)

In count I of its complaint the County contended that Polidori was improperly using the property in question as a landing strip without possessing an airport conditional use permit. Count II alleged that Polidori or his family were illegally engaging in three commercial businesses on the property in question, including an interior decorating business, a warehouse-antique business and the "Victory Air Museum." Count III alleged that Polidori maintained unspecified junk and debris on the premises; that a junkyard is not a permitted use in an agricultural

zone; and that the "junk" should be ordered removed. Count IV alleged that Polidori had erected various signs on the property without permits from the zoning officer as allegedly required by the Lake County Zoning Ordinance and requested that he be ordered to obtain such permits or remove the signs.

The defendant answered, denying the complaint and counterclaimed in declaratory judgment, alleging that the Lake County Zoning Ordinance is unconstitutional as applied to his use of his property as a restricted landing area and as an aircraft museum.

An evidentiary hearing was conducted in the circuit court of Lake County. At that proceeding a great deal of testimony was taken. It was revealed that the defendant acquired the property in 1952. In 1960 he applied to the Illinois Department of Aeronautics for a restricted landing area on his land. A written notice of that application was sent to the County and to neighboring property owners by the Department in order to determine if there were any objection. In this regard we note that the stated policy of the Department of Aeronautics was not to issue such permits unless the property in question had the appropriate local zoning. No objection was made by any party, including the County, and the permit was issued. Notwithstanding its failure to object, the County notified the defendant that his restricted landing area was located in a "F" Farming District and that he was required to obtain a special use permit. (Under the 1966 Zoning Ordinance this is now referred to as a "conditional use permit.") Nothing further was done by either the defendant or the County until 1974, when the County notified the defendant that he was in violation of various zoning provisions. These long-delayed actions were apparently precipitated by the complaints of a neighbor, Joseph Lenzen, who resides immediately north of the Polidori property. Two ordinance enforcement complaints were filed against him. Complaint No. 928 alleged that Polidori was operating three businesses from a "single family residential" zone without the appropriate licenses or zoning changes. Complaint No. 930 alleged that he was storing junk and debris in a "residential zone" in violation of the County nuisance ordinance. We note parenthetically first that both complaints are facially erroneous since the defendant's land is not in a residential zone and, second, that at no time was the defendant ever cited for his restricted landing area prior to the filing of the action before us.

The defendant admitted under section 60 examination that his land had been used for a warehouse-antique business but that its use as such had been abandoned. He also denied that an interior decorating business was operated on his property and never attempted to justify any such use. In addition, he testified that the museum solicits one dollar "donations" from its visitors; that no one had ever been denied admittance for failure

to donate; and that the total amount of donations for the year was approximately $2900.

The County zoning officer admitted that the County itself had constructed, and was maintaining, a museum in an agricultural zone without any legal authorization for such improper use. The zoning inspector who had originally cited the defendant testified that the junk and debris which he had noted on his first inspection of the property had been cleaned up.

Joseph Lenzen, the discontented neighbor, testified that many planes had flown over his property at low altitude and that one had hit a tree on his property. However, his testimony did not, for the most part, tie in these overflights with the defendant's use of his restricted landing area. To the contrary, most of the overflights were by aircraft which did not use the landing area.

Interestingly, Bernard Lenzen, a brother of Joseph Lenzen, who lives immediately north of his brother's property, testified that the use of the subject property by the defendant as a restricted landing area and museum has not interfered with the use and enjoyment of his property.

The defendant offered testimony to support his position that the aircraft in his museum were "antiques," being over 30 years old, and that his operation was unique and a contribution to the public good. This evidence was unrebutted by the County. Testimony of other witnesses was presented as to reasonableness of the present zoning classification. It was established that the property in question was submarginal for farming because a large portion was in the flood plain and the soil was poor. Additionally, even the County's own expert testified that the highest and best use of the property was for large residential estates, not agriculture.

At the close of the evidence the trial court entered an injunction ordering the defendant to:

(1) cease using the property in question as a landing strip;

(2) cease operating an interior decorating business, a warehouse antique business or the "Victory Air Museum" on the premises;

(3) cease maintaining a "junkyard" on the premises;

(4) remove all signs erected on the property, as well as all items related to the businesses or the air museum, as well as all junk and debris within six months.

The court also found that a zoning ordinance is presumed to be valid and that defendants did not establish by clear and convincing evidence that the classification of their property was arbitrary or unreasonable. The defendants appeal the entry of that order.

After a careful review of the briefs, argument and record in this matter we are faced with the following issues necessary for the

determination of this case. First, is a restricted landing area regulated by the Lake County Zoning Ordinance and must a conditional use permit be obtained in order to maintain such a use in an agricultural zone? Second, is the aircraft museum maintained on the property in question since the early 1960's a legal, nonconforming use under the provisions of the Lake County Zoning Ordinance and the evidence adduced at trial? Third, is the trial court's finding that the defendant was maintaining an illegal junkyard on his premises against the manifest weight of the evidence? Fourth, do the provisions of the Lake County Zoning Ordinance specifically require that permits be obtained for the painting of signs upon existing buildings or for the erection of signs, irregardless of size or nature, on private property?

We turn first to the issue of whether a restricted landing area is regulated by the Lake County Zoning Ordinance. There is no question that the ordinance requires airports and heliports to possess a conditional use permit if they are to be located in an agricultural zone; however, it does not define either term. The defendant contends that a restricted landing area, such as the one which he maintains, is not an "airport." In support of his contention he points to the Illinois Aeronautics Act which contains the definitions of "airport" and "restricted landing area" therein, which appear to be mutually exclusive. (Ill. Rev. Stat. 1975, ch. 15½, pars. 22.6, 22.8.) We also note that the definition of "airports" contained in the Airport Zoning Act (Ill. Rev. Stat. 1975, ch. 15½, par. 48.2), is limited solely to areas used for taking off and landing that are utilized, or to be utilized, by the public. The definitions contained in the municipal airport authorities act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.1), the County Airports Act (Ill. Rev. Stat. 1975, ch. 15½, par. 110), and the St. Louis Metropolitan Area Airport Authority Act (Ill. Rev. Stat. 1975, ch. 15½, par. 302(f)) do not specifically exclude restricted landing areas from their scope, but we note that they have specialized purposes. While these acts of the Illinois legislature cannot be read in *pari materia* with the ordinance enacted by Lake County, it is quite obvious that they do raise a serious question of ambiguity insofar as the terms used in the County Ordinance.

■■ The law is well settled that zoning ordinances are in derogation of common law rights to the use of real property and, therefore, such ordinances should be strictly construed in favor of the right of a property owner to the unrestricted use of his property. However, in stating that principle, we recognize that in that construction we must give equal weight to all portions of that ordinance which are germane to the subject involved. See *Herrington v. County of Peoria* (1973), 11 Ill. App. 3d 7, 295 N.E.2d 729; *Oak Park Trust & Savings Bank v. Village of Elmwood Park* (1969), 113 Ill. App. 2d 121, 251 N.E.2d 788; *City of Rockford v. Eisenstein* (1965), 63 Ill. App. 2d 128, 211 N.E.2d 130.

■ With these principles in mind, we hold that the Lake County Zoning Ordinance is ambiguous and therefore is not applicable to a restricted landing area. Thus, a conditional use permit need not be obtained by this defendant. Accordingly the trial court's injunction entered on count I of the plaintiff's complaint was improper.

We now turn to the second question, whether the aircraft museum is a legal nonconforming use under the present zoning ordinance. We have carefully reviewed the record and note that it contains no evidence whatsoever that the Victory Air Museum was an unlawful land use prior to March 31, 1966, the apparent effective date of the present ordinance. Therefore, all the provisions of that ordinance clearly apply. Article V of the Ordinance provides, in perlinent part, that:

> "Any lawful use of land or structures, or any structure, existing at the date of passage of this Ordinance or subsequent amendment thereto, and located in a zone in which it would not be permitted as a new use or structure under the terms of this Ordinance, is declared to be a legal nonconformance. It is the intent of this Ordinance to permit these nonconformances to continue until terminated either by voluntary act or by catastrophic event, and to encourage their conversion to conformance where possible."

While the other provisions of article V set out various regulations regarding the continuation of nonconformances, none of these regulations applies here. The provisions of any zoning ordinance, if any, in existence prior to 1966 were not introduced into evidence by the County. Since we may not go beyond the record before us we must conclude that the use as a museum prior to 1966 was lawful and, therefore, a legal nonconforming use, which cannot be enjoined. We note, parenthetically, that our holding in this regard is based solely upon the state of the record before us. The County did not meet its burden of proof on this count and must live with the result.

■ The third issue before us is whether it was beyond the manifest weight of the evidence for the trial court to find that the defendant was illegally maintaining a junkyard on the property in question. We have combed the record with great care and find that, although various witnesses described items on display in the museum as "junk," it is equally clear that not one scintilla of evidence was ever introduced to support the County's allegation that a junkyard, under the terms of the zoning ordinance, existed on the defendant's property. Article II of the ordinance specifically defines a "junkyard" as:

> "Any land or *structure* used for a salvaging operation, including, among other things, the storage and sale of waste paper, rags, scrap metal, and discarded materials, and the collecting, dismantling, storage and salvaging of unlicensed, inoperative vehicles."

No evidence was introduced that the defendant was selling any of the items on his premises or that he was engaged in any sort of commercial salvage operation. The aesthetic impression left on an uninformed viewer does not make the defendant's collection junk. In fact, the record reflects that many of the airplanes and objects in the defendant's museum are considered to be "antiques" by those qualified to appreciate such matters. In the light of this lack of evidence we hold that the injunction entered against the defendant in response to count III of the plaintiff's complaint was improper and against the manifest weight of the evidence.

■ Lastly, we turn to the issue of whether the existing provisions of the Lake County Zoning Ordinance regulate the painting of signs upon existing structures or the erection of other signs upon one's own property. The county contends that the provisions of article VI, section II of the Ordinance controls. That section states:

"Before any building or other structure, or part thereof, shall be erected, constructed, reconstructed, enlarged, moved, or structurally altered, and before the use of any building, structure or land is changed within the County outside the limits of all cities, villages and incorporated towns, a Building Permit and Certificate of Occupancy shall be obtained from the Zoning Officer."

Article II of the Ordinance defines "structure" as:

"Anything constructed, erected, or placed, which requires location in or on the ground or is attached to something having a location on the ground."

Having examined these provisions, we conclude that they are without doubt unconstitutionally vague and overbroad as applied herein. To make any other finding would lead to the patently absurd result of requiring the permission of the county zoning officer before one places anything whatsoever in or on the ground or even before one paints one's own house. Unfortunately, a declaratory judgment action has not been filed regarding this interpretation of the zoning ordinance. However, we have no compunction in reversing the injunction entered to enforce this section of the Zoning Ordinance as applicable to the painting of signs on existing structures or the erection of small signs on the defendant's own property.

For the reasons stated above, the injunction entered against these defendants is reversed, except as to that portion prohibiting the operation of an interior decorating business and a warehouse-antique business on the premises, which is affirmed.

Affirmed in part and reversed in part.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.