John W. COOTS, Jr., et al.,
Respondents-Plaintiffs,

v.

J. A. TOBIN CONSTRUCTION CO.,
Appellant-Defendant.

No. WD 32806.

Missouri Court of Appeals,
Western District.

May 18, 1982.

Max W. Foust, John Del Perico, John F. Clisbee, Kansas City, for appellant-defendant.

Douglas B. Eskridge, Abe Shafer, Kansas City, for respondents-plaintiffs.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

J. A. Tobin Construction Company appeals from the judgment of the circuit court permanently enjoining Tobin from operating a rock quarry and crusher plant on land leased by Tobin in rural Platte County. Reversed.

This action commenced on the petition of various private property owners who, under the provisions of § 64.690.2, RSMo 1978, are authorized to sue for restraint, abatement or correction of alleged zoning violations. Although county officers are not parties to the suit and the record suggests the county is in agreement that Tobin is entitled to operate the quarry, the issue is presented, nonetheless, as to whether the zoning classification of the land as established by the Platte County Zoning Order empowers Tobin as a matter of right to use the property for rock quarrying and crushing operations. If the zoning was appropriate for this use, the trial court erred when its injunction was issued.

Tobin first entered into a lease of the subject land, comprising 160 undeveloped acres, in 1968. At that time, Tobin applied for and was granted rezoning of the land from District A, agricultural, to District M–2, heavy industrial. Such classifications were within the schedules of the 1953 Platte County Zoning Order. Although Tobin had intended at the time to commence a quarry operation, none was actually undertaken.

Tobin's interest in obtaining a source of crushed rock was renewed in 1980 because of contemplated construction on Interstate Route 435. A new lease of the land was negotiated for a term of five years, preliminary excavation was completed and the required equipment was moved onto the site. Before actual quarrying could commence, however, the present action was filed and the permanent injunction was issued May 11, 1981.[1]

The M–2 District zoning which had been acquired on application by Tobin in 1968 had changed by 1980 through the adoption of the Platte County Amended Comprehensive Zoning Order of 1972. As will hereafter be discussed in more detail, the 1972 zoning order provided a different scheme of zoning classifications which substituted different district designations and different use descriptions. A major difference between the 1953 and 1972 orders was that the former attempted specifically to catalog each use permitted within a district in a "laundry list" manner whereas the latter contained only broad categories or classes of uses. Thus, under the 1953 order, uses permitted in District M–2 included and expressly enumerated quarrying and rock crushing. The 1972 order made no such provision electing instead to employ the general term "Industrial uses."

The 1953 zoning order had provided three districts for manufacturing or industrial type activities, Districts M–1, M–2 and M–3. District M–1 was further identified as "Light Industry," District M–2 was "Heavy Industry" and District M–3 was "Heavy Industry (Residual Uses)." These designations were abandoned in the 1972

---

1. In one count of the plaintiffs' petition, it was alleged that use of the land by Tobin for a quarry constituted a public nuisance. The trial court expressly found in favor of Tobin as to this ground and that decision was not appealed. The injunction was based solely on the allegation that quarry use violated the zoning extant in 1980.

order in favor of a single district—PI—Planned Industrial. A part of the 1972 order was a Table of General Use Regulations which, as to each district, listed the following: Uses Permitted by Right, Uses Permitted by Special Permit of the Planning Commission, Permitted Accessory Uses, Permitted Accessory Signs. Relevant to this suit are the uses permitted by right in the PI District stated as follows:

"Industrial uses which may include manufacturing, fabrication, processing, converting, altering, assembling, testing or other handling of products except those specifically prohibited in Sec. 5.1–6."

Suffice it to say here that uses listed in § 5.1–6 do not include rock quarrying or crushing and there is no contention that § 5.1–6 is in any way applicable to this case.

When the 1972 order was adopted, it was necessary to convert existing zoning to the new set of category designations. A zoning map of the county showing revised district designations was prepared and incorporated by reference in the 1972 zoning order. The effect was to rezone the entire county, but accommodating as nearly as possible the new district symbols to the zoning which had prevailed under the 1953 order. In some instances, such as District AG—Agricultural, the change was inconsequential. In others, as for example the industrial districts, M–1, M–2 and M–3, the change was more complex.

The subject property which had been zoned M–2 under the 1953 order was placed in the 1972 category of PI. The evidence disclosed that a number of rock quarries were in actual operation in Platte County when the 1972 zoning order was adopted. Those tracts, in common with the subject property, were all placed in District PI on the 1972 zoning map.

Appellant Tobin contends it is entitled as a matter of right under the 1972 zoning order to use the subject property for operation of a rock quarry and crusher in District PI, particularly here where the land had formerly been zoned for that use, and elsewhere in the county actual quarries were being operated in PI zoned areas. The answer to the question depends on the interpretation given the language used in the table appearing in the 1972 zoning order, particularly the definition of industrial uses as quoted above. Also bearing on the issue is the construction which county authorities have placed on the zoning order and its application to similar uses.

■ The determination of what uses are permitted under a zoning ordinance "must be made on the basis of the wording of th[e] particular ordinance and the context in which it occurs." *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266, 272[5] (Mo. banc 1964). Among the uses permitted by right in PI districts are "[i]ndustrial uses which may include manufacturing, fabrication, processing, converting, altering, assembling, testing or other handling of products, except those specifically prohibited in Sec. 5.1–6."

■ "The basic rule of statutory construction is to seek the intention of the legislators and, if possible, to effectuate that intention." *Schimmer v. H. W. Freeman Construction Co., Inc.*, 607 S.W.2d 767, 769[2] (Mo.App.1980). Since the ordinance does not offer a definition of "industrial uses", "products", or the processes described in the ordinance, legislative intent must be ascertained by giving the words an ordinary, plain, and natural meaning, by considering the entire act and its purposes, and by seeking to avoid an unjust, absurd, unreasonable, or oppressive result. *State ex rel. C.C.G. Management Corp. v. City of Overland*, 624 S.W.2d 50, 53[4] (Mo.App. 1981); *Hasekamp v. Superior Equipment Company, Inc.*, 490 S.W.2d 385, 388[3] (Mo. App.1973).

■ It is widely accepted that zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority. 3 Anderson, American Law of Zoning § 16.02 (2d ed. 1977); 1 Rathkopf, The Law of Zoning and Planning ch. 9 (4th ed. 1977); *e.g., County*

*of Lake v. First National Bank of Lake Forest,* 68 Ill.App.3d 693, 25 Ill.Dec. 123, 126[1], 386 N.E.2d 394, 397[1] (1979); *Keller v. City of Bellingham,* 20 Wash.App. 1, 578 P.2d 881, 887[9] (1978). Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to "give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes." *Frank's Nursery Sales v. City of Roseville,* 295 N.W.2d 604, 608–609[4] (Minn.1980).

Tobin has contended that quarrying and crushing of limestone for use in highway construction falls within the industrial use of manufacturing as set out in the Platte County Zoning Order and that its business may therefore be conducted as a matter of right in District PI. Manufacturing has been defined as "the processing and converting of raw, unfinished, or finished materials or products, or any of these into an article or substance of different character, or for use for a different character, or for use for a different purpose." 3 Anderson, American Law of Zoning § 16.11 (2d ed. 1977). The terms used in the zoning order, "manufacturing", "processing", and "converting", are defined in Webster's Third New International Dictionary (1971) as follows:

"manufacturing—to make . . . into a product suitable for use, . . . to make from raw materials by hand or by machinery . . .; processing—to prepare for market, manufacture, or other commercial use by subjecting to some process . . . to make useable by special treatment . . .; converting—to change or turn from one state to another; alter in form, substance, or quality . . . ."

■ We are obliged to conclude that rock quarrying and crushing, by application of reasonable and settled definitions of the term "manufacturing" are industrial uses which the zoning order authorizes in Planned Industrial Districts.

This conclusion is reinforced by examination of the history of zoning regulation in Platte County and the apparent interpretation placed on the zoning orders by the regulatory body.

As was noted above, the 1953 zoning order created three industrial use zones which described with great particularity the uses permitted in each zone. The M–2 Zone, for example, listed operations such as blast furnaces, rolling mills, coke ovens and steel foundries. Also listed were the particular products which could be manufactured in each zone. From the prefatory language (*e.g.,* "In District M–2 no building or land shall be used * * * for any purpose other than one of the following * * * "), it seems apparent that if provision was not made for a particular use in a given zone, that use was automatically excluded. *See State ex rel. Barnett v. Sappington,* 266 S.W.2d 774, 777 (Mo.App.1954). By contrast, use regulations in the 1972 zoning order establish only broad classes of uses.

The change in drafting technique indicates a conscious decision to abandon the restrictive approach taken in the 1953 zoning order, in favor of flexible use regulations designed to accommodate any use within the general definitions stated. This conforms to the modern trend of abandoning specific use listings and substitutes uses of generally described classes. 2 Anderson, American Law of Zoning § 9.41 (2d ed. 1976); 2 Rohan, Zoning and Land Use Controls § 14.01[2] (1982).

■ The interpretation placed upon a zoning ordinance by the body in charge of its enactment and application is entitled to great weight. 5 Rohan, Zoning and Land Use Controls § 36.03[3], at 36–45 (1982); 101A C.J.S. *Zoning and Land Planning* § 101, at 368–369 (1979); *Daniel D. Rappa, Inc. v. Engelhardt,* 256 A.2d 744, 746[3] (Del.1969); *Belle-Haven Citizens Association, Inc. v. Schumann,* 201 Va. 36, 109 S.E.2d 139, 142[2] (1959). In revising Platte County's zoning laws, the county court replaced the former industrial zones with the PI District. Most of the industrial uses listed under the M–2 classifications are now permitted either by right or special permit in PI districts. Under the 1953 zoning ordinance, quarrying and rock crushing were

uses by right in M–2 zones. The record shows that when the county was rezoned in accordance with the 1972 ordinance, several small tracts of land on which quarries were or had been operated were zoned PI without exception.

■ The zoning enforcement officer of Platte County testified concerning the tracts zoned PI on which quarries were located. These tracts are indicated on the zoning map of Platte County introduced and received into evidence. In construing a zoning ordinance, it is permissible to consider the clear indication of use classifications set forth on a zoning map which is incorporated by reference in the zoning ordinance. 101A C.J.S. *Zoning and Land Planning* § 101, at 369 (1979); *Oak Park Trust & Savings Bank v. Village of Elmwood Park*, 113 Ill.App.2d 121, 251 N.E.2d 788, 791[2] (1969); *Martin v. Marble Cliff Quarries Co.*, 175 Ohio St. 454, 196 N.E.2d 95, 97[1] (1964).

The uniform placement of existing quarries in PI districts under the 1972 rezoning is persuasive evidence that the county court intended quarrying to be a use by right in PI districts. To conclude otherwise would mean that the county court purposely created a host of nonconforming uses throughout the county. Such would be contrary to one of the primary purposes of zoning ordinances, which is to strictly limit and eventually eliminate all nonconforming uses. *City of Monett, Barry County v. Buchanan*, 411 S.W.2d 108, 116[11] (Mo.1967); *Hoffman v. Kinealy*, 389 S.W.2d 745, 750[4] (Mo. banc 1965).

In opposition to a construction and application of the 1972 zoning order to entitle quarry operation in a PI district as a matter of right, respondents observe that the zoning order allows mineral extraction as a special use by permit in agricultural and certain residential districts. Under § 4.6–7, a special permit may issue only upon compliance with certain standards and regulations including site rehabilitation and the posting of a performance bond. Respondents suggest, therefore, that a quarry may operate only in these districts, not in District PI, and, if at all, only by special permit.

Pertinent to this aspect of the case is § 3.2 of the 1972 zoning order which states:

"In general all regulations for each district are exclusive and noncumulative except where the regulations for a district expressly incorporate regulations from another district."

The effect of this section is to reject the concept of cumulative zoning of the 1953 order in which each district usage in descending order incorporated all prior district usages. Thus, a more inclusive classification such as M–2, Heavy Industrial, incorporated under the 1953 order all more restrictive uses to and including residential. The policy of exclusionary zoning represented by the 1972 ordinance, and expressed in § 3.2, recognizes that residential uses can be just as injurious to an industrial district as would the intrusion of industry into a residential neighborhood. Exclusionary zoning ordinances establish districts for groups of uses, or named uses, from which all other uses are excluded. *See* 2 Anderson, American Law of Zoning § 9.15 (2d ed. 1976); 2 Rathkopf, The Law of Zoning and Planning § 17.08 (4th ed. 1977). For example, under the 1972 ordinance, § 3.2 would be interpreted to mean that residential and commercial uses are not to be allowed in a PI district unless expressly incorporated therein. The language of the use regulations for PI districts, not § 3.2, is what determines the scope of "industrial uses" to be allowed in those districts.

Accepting the exclusionary nature of the 1972 zoning order design, the question respondents present is whether provision in the order for mineral extraction in agricultural and residential districts by special permit necessarily precludes the same activity in PI districts.

■ The special use technique has developed as a flexible means of controlling uses considered to be essentially desirable, necessary or convenient to the community, but which by their nature or operation are regarded as troublesome in terms of traffic

congestion or potential hazards to the public health and safety. 3 Anderson, American Law of Zoning § 19.01, at 359–360 (2d ed. 1977). Thus, it is recognized that the legislative body may provide for the inclusion of such uses only upon administrative approval granted in accordance with prescribed standards and conditions. *Erigan Company, Inc. v. Town of Grantwood Village*, 632 S.W.2d 495, Missouri Court of Appeals, Eastern District, at 498. "[T]he technique of special use in zoning presupposes some sort of legislative determination of which uses are allowable but potentially inconsistent with normal use and thus subjecting them to special governmental supervision." *Cornell v. County of DuPage*, 58 Ill.App.3d 230, 15 Ill.Dec. 708, 711–712[4], 374 N.E.2d 1, 4–5[4] (1977).

■ Section 64.281.3, RSMo 1978 allows counties to adopt regulations for special uses which if "generally permitted in a specific district or districts, would pose undue regulatory difficulties." It does not inexorably follow that the inclusion of a particular use by special permit in one district precludes the same use from being permitted as a matter of right in another district. In *City of Lake Lotawana v. Lehr*, 529 S.W.2d 445 (Mo.App.1975), the board of zoning adjustment issued a special use permit for the underground mining of limestone in a district where such use was allowed by special permit. This court rejected an argument by opponents of the mining operation that the listing of quarrying as a general use in another district barred that use from being allowed by special permit in another district.

"The inclusion of quarry use in District H ... did not exhaust the zoning power of the county. It still retained the further right to also permit quarrying in one or more other districts. While the Jackson County Court found that there was [sic] no undue regulatory difficulties in allowing quarrying in District H Heavy Industrial District, that did not at all signify that there might not be undue regulatory difficulties in allowing that

same use in districts designated generally for higher uses. There is no inconsistency in the County Court's determination that quarrying can be permitted generally in District H without regulatory problems, but that such problems do exist in permitting that use in other districts. It is therefore entirely appropriate to provide for the general quarrying use in District H and at the same time to provide for special permits to conduct that use in other districts." *Id.*, at 454[13].

Similarly in the present case there is no inconsistency in finding that quarrying can be allowed as a matter of right in a planned industrial district without the stringent regulations of § 4.6–7 even though quarrying is allowed only by special permit in agricultural and residential districts. The county court could well have concluded that quarrying is more incompatible with other uses allowed in the latter districts, hence such an operation must be more intensely regulated in those areas. Indeed, it would arguably be incongruent to allow quarries in residential areas, traditionally regarded as the "highest" use of land [2 Anderson, American Law of Zoning § 9.14 (2d ed. 1976)], while excluding them from an industrial zone.

The broad terminology used by the 1972 zoning ordinance to define uses by right in PI districts, when considered in the context of the entire ordinance, leads to the conclusion that the operation of a quarry is an "industrial use" permitted in PI districts.

Supporting this determination is the pattern established by the county court of zoning existing quarries in PI districts at the time of the 1972 rezoning. The inclusion of mineral extraction by special permit in agricultural and residential districts does not prevent the operation of a quarry as a use by right in PI districts. The injunction issued by the trial court was based on the finding that Tobin was not entitled as a matter of right to operate the quarry and crusher in a PI district. That conclusion was in error and the injunction must therefore be dissolved. The record does, however, indicate that various permits from

county, state and federal agencies must be procured before the quarry operation may commence. The nature, availability and the issuance of such permits was not at issue in the injunction proceeding and is outside the scope of this opinion.

The judgment is reversed and the cause is remanded with instructions to dismiss the cause at the cost of plaintiffs-respondents.

All concur.