Jon CUNNINGHAM, d/b/a Jag Shop, et al., Respondents,

v.

BOARD OF ALDERMEN OF The CITY OF OVERLAND, et al., Appellants.

No. 48671.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 14, 1985.

Steven W. Garrett, Brackman, Copeland, Oetting, Copeland, Schmidt & Stock, Clayton, for respondents.

Norman A. Selner, Selner, Glaser & Komen, St. Louis, for appellants.

SIMON, Presiding Judge.

The mayor, clerk, and Board of Aldermen of the City of Overland, appellants, appeal from the judgment of the Circuit Court of St. Louis County entered in favor of respondents, Jon Cunningham, d/b/a Jag Shop, and Seiler Enterprises, Inc., d/b/a Mike & Lou's Auto Body, who had sought review of appellants' action in denying respondents' application for a business license in Overland. We affirm.

On appeal, appellants contend: (1) the denial of the business license to respondents was proper because the applicable zoning ordinance does not permit auto repair shops within the M–1 Industrial District in which the property is located; (2) any decision to approve the license application would be an ultra vires action by them because of the zoning ordinance restrictions; (3) the litigation became moot by the expiration of respondents' contract to buy the real estate precluding any possible remedy; and (4) the court's decision on the merits may, under principles of collateral

estoppel, deprive appellants of a full and fair trial on the issue of liability in respondents' civil action for damages against appellants filed in federal court.

Respondents filed a joint application for a business license to operate their businesses, an auto repair shop and an auto body shop at 1901 Brown Road in the City of Overland. Mr. Spetner, d/b/a "Sports Energizers," also applied for a business license at the same address. The Board of Aldermen of Overland reviewed all the applications for business licenses at a hearing on August 8, 1983. At the hearing, appellants learned respondents had a contract to purchase the property at 1901 Brown Road, contingent upon their obtaining business licenses to operate from that address by August 15, 1983. Mr. Spetner had no signed contract. Mr. Spetner had only submitted a purchase offer to the owner of the property on Brown Road. After permitting certain residents at the hearing to voice their strong opposition to approval of respondents' business license application, the Board voted five to three to deny respondents' application.

On August 12, 1983, respondents filed a petition for review seeking in the first count to reverse the Board's decision and to compel the Board, the mayor, and the city clerk to issue the license before August 15, 1983, the date of the expiration of their purchase contract for the premises. Further, the petition contained a second count, a writ of mandamus, also seeking to compel the Board to issue the license. The prayers in both counts asked for payment by Overland of their court costs and attorneys' fees, and for such other orders deemed meet and proper.

The trial court did not rule by August 15, 1983, as the petition originally prayed. The case was not tried until March 22, 1984. During the pendency of the litigation, the Board issued a business license to Mr. Spetner, who then began to, and apparently still does, occupy the premises on Brown Road. On April 4, 1984, the trial court rendered its judgment finding that respondents no longer had an option contract for the purchase of the property and that they could no longer acquire such an option, but that appellants had illegally denied respondents the business license. The court ordered the Board's decision be reversed and found the action of the Board to be arbitrary and capricious, yet did not order a writ of mandamus for the issuance of the business license because of the change in circumstances. All costs of the proceeding were taxed against Overland and no attorneys' fees were awarded after the court stated it had no authority to do so.

In addition to the action in the Circuit Court of St. Louis County, respondents filed a damage action against appellants in federal court. Neither the pleadings nor the status of the federal court action appear in the record on appeal.

■ Section 536.140 RSMo 1978, the statute governing appeals from decisions of administrative agencies, delineates the scope of review of the trial court. Our review is of the Board of Overland's action and not the judgment of the circuit court. *Evangelical Retirement Homes v. State Tax Commission,* 669 S.W.2d 548, 552 (Mo. banc 1984). Generally, our review is limited to a determination of whether the Board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction. *Id.* at 552[4]. Section 536.140.2 RSMo 1978.

Appellants' first point is that the trial court erred in ruling that the use for the automobile repair shop was within a properly zoned area and that the zoning was proper for the business license requested because the Overland zoning ordinance, particularly the M–1 Industrial District provision, does not permit automobile repair shops as either a permissive, permitted, or conditional use within that area. Section 4, captioned "Use Regulations," of the zoning ordinance of the City of Overland establishes districts setting forth the purpose for which a building or premise shall be used within the respective districts.

The first category under § 4(A)(9), the M–1 Industrial District, is "Permissive Uses" which begins: "(a) Any nonresidential use permitted in the C–2 Commercial District." The next six permissive uses delineate a variety of manufacturing activities including the manufacturing or assembly of electrical or electronic apparatus, boats, bolts, nuts, screws and rivets, firearms, tools, dies, machinery and hardware products, and sheet metal products. The final permissive use specifies "Generally those light manufacturing uses similar to those listed in items above which do not create any more danger to health and safety in surrounding areas and which do not create any more offensive noise, vibration, smoke, dust, lint, odors, heat, or glare than that which is generally associated with light industries of the type specifically permitted." Section 4(A)(9)(h). The M–1 Industrial District then lists "Conditional Uses" under which "None" appears.

Section 4(A)(7), C–2 General Commercial District, lists permissive uses and provides: "Any permissive use of the C–1 District," followed by a litany of other permissive uses. The C–2 Commercial District also contains "Conditional Uses" which includes public garage, filling station, or automobile repair shop.

Appellants state that, where the M–1 Industrial District "Permissive Uses" lists "any nonresidential use permitted in the C–2 Commercial District," the ordinance means only those uses specified under C–2 "Permissive Uses," and not the C–2 "Conditional Uses." Appellants argue that, although the use of the terms "permitted" and "permissive" are used loosely in an interchangeable fashion throughout the ordinances, the clear intent was to maintain discretionary power over all of the conditional uses mentioned in the various zoning districts. Respondents answer that "any nonresidential use permitted in C–2" properly includes *both* C–2 Permissive Uses and C–2 Conditional Uses as "Permissive Uses" in the M–1 Industrial District.

In support of its view, respondents highlight evidence in the record that appellants issued licenses to automobile repair shops in districts zoned M–1 Industrial under the same ordinance on prior occasions, and that at the time of respondents' hearing in Overland before the Board on the business license request, the mayor, Board, Building Commissioner, and city attorney were under the impression that the property was appropriately zoned for the use requested. Relying on *Walmer Investment Co. v. Mueller*, 512 S.W.2d 180, 184 (Mo.App. 1974), appellants reply that regardless of how many occupancy permits or business licenses were improperly issued to auto body shops in the M–1 Industrial District or of how many times the Board had improperly assumed auto body shops were properly allowable within the M–1 District, these two factors do not prevent the proper application of the ordinance. Thus, the issue is whether the language of M–1 "Permissive Uses" which states "any nonresidential use permitted in the C–2 Commercial District" encompasses both Permissive Uses and Conditional Uses in C–2 or just C–2 Permissive Uses.

The ordinance does not define either "permitted use" or "permissive use." In *Coots v. J. A. Tobin Construction Co.*, 634 S.W.2d 249 (Mo.App.1982), the court sets out the following principles of construction for interpretation of zoning ordinances:

(1) The determination of what uses are permitted under a zoning ordinance must be made on the basis of the wording of the particular ordinance and the context in which it occurs;

(2) The basic rule of statutory construction is to seek the intention of the legislators and, if possible, to effectuate that intention;

(3) Legislative intent must be ascertained by giving the word an ordinary, plain and natural meaning, by considering the entire act and its purposes and by seeking to avoid an unjust, absurd, unreasonable or oppressive result;

(4) Zoning ordinances, being in derogation of common law property rights, are to be strictly construed in

favor of the property owner against the zoning authority;

(5) Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes;

(6) The interpretation placed upon a zoning ordinance by the body in charge of its enactment and application is entitled to great weight.

634 S.W.2d at 251–52[1–4, 6].

Since neither "permitted" nor "permissive use" is defined in the ordinance, we look then, in accord with *Coots'* third tenet, to the ordinary, plain and natural meaning of the words. The adjective "permissive" is defined in Webster's Third New International Dictionary (1976): "(1) granted on sufferance; tolerated; (2) granting permission: allowing freedom; tolerant, indulgent; (3) allowing discretion: optional." The adjective "permitted" means "allowed." A conditional use, which the Overland ordinance does define, is: "a use allowed in a zoning district after a permit is granted by the Board of Adjustment according to provisions of Section 9, or Board of Aldermen according to the provisions of Section 4."

"Permissive use," in contrast to "conditional use," connotes a use the Overland legislative body grants to its landowners by sufferance, as a matter of right. Like a permissive use, a "conditional use" is also allowed; however, it is allowed only if the conditions prescribed by the ordinance are met. Thus, by definition, both permissive and conditional uses are "allowed," that is, "permitted."

Appellants dispute the conclusion that the language of the ordinance reflects an intention by the legislature for "permitted" to encompass both permissive and conditional uses. Appellants point to another section of the ordinance which they state also uses the words "permitted" and "permissive" with no intention that "permitted"

include both permissive and conditional. Appellants conclude that the references are used interchangeably with exactly the same intent.

We have carefully reviewed the legal file containing portions of Overland's ordinances. Certain pages from Overland's zoning ordinances are missing from the legal file. The duplication of several pages of the ordinance suggests the omission is due to inadvertence. The broad meaning respondents ascribe to "permitted" and "permissive" in the M–1 Industrial District does appear different from the use of "permitted" and "permissive" in the R–2 and R–3 Districts which Overland highlights. We have no problem finding that the two words should not be given the same meaning in the two different contexts. It is not logical or necessarily inferable that the same words used elsewhere are used interchangeably with exactly the same intent as appellants contend. We accept the first tenet in *Coots* that the statutory construction must be made on the basis of the wording *in the context* in which it occurs. 634 S.W.2d at 252[1]. (emphasis added).

It is clear from Overland's districting plan that it has generally followed the traditional Euclidean zoning scheme where the highest use district (as well as the least intensive district) is the residential, single family district. All other districts are basically cumulative from the residential grades (RS–1 through RA) to C–1 Neighborhood Commercial, C–2 General Commercial, C–3 Planned Commercial, M–1 Industrial and finally, S–1 Special Development District. The higher zones remain the more exclusive.

 M–1's permissive uses include "any nonresidential use permitted in C–2." Its conditional uses list "none." If M–1's permissive uses do not include *both* C–2 permissive and conditional uses, the anomalous result is that auto repair shops, allowed as a conditional use in the higher zoned C–2 General Commercial District, are excluded in the lower zoned M–1 Industrial District. Such a result by appellants' sug-

gested reading of the ordinance does not effectuate the clear intention of the legislature that the districts follow the cumulative technique whereby the ordinance excludes lower uses, *e.g.*, commercial and industrial uses—from the "higher" use districts, *e.g.*, single family, two family, and general residential zones. To accept the ordinance interpretation which appellants now proffer on appeal is to ignore the second and third tenets of *Coots.* 634 S.W.2d at 251. Thus, appellants' position, although persuasively presented, is untenable.

 The confusion is over the meaning of the words "permitted" and "permissive." Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes. *Id.* at 252. Since zoning ordinances are to be strictly construed against the zoning authority and in favor of the property owner, we find the denial here of the use for an auto repair shop in an industrial district to be unreasonable and oppressive in light of the ordinance's language.

We ascribe finally to the last tenet of *Coots* that the interpretation of the ordinance given it by the Board responsible for its enactment and application is entitled to great weight. In this regard, we are persuaded by the record which reflects that appellants have routinely granted business licenses to auto repair shops within the M–1 Industrial District for the past thirteen years. No evidence exists that these uses were authorized pursuant to applications for special use permits or conditional use permits. Respondents themselves in the past had applied for a business license, not a special use or conditional use permit, to operate an auto repair shop in the M–1 Industrial District which appellants approved unanimously. Appellants' first point is denied.

 Appellants' second point asserts that the Board of Aldermen could not lawfully grant a business license to respondents to conduct a business at the location in which the particular business would be prohibited by the zoning law. To do so would be an ultra vires act. We have found the ordinance does not prohibit the operation of an auto repair shop within the M–1 Industrial District; therefore, it would not have been an ultra vires action on the part of the Board to issue the license. Appellants' second point is denied.

We next address appellants' third point, the issue of mootness. Appellants state the trial court erred in not dismissing respondents' lawsuit as moot because the expiration of respondents' contract to buy the real estate reflected a change in circumstances affording respondents no possible remedy. The trial court's judgment decreed the following:

The Court determines that the use for the automobile repair shop was within a properly zoned area and that the zoning was proper for the business license requested. However, because of a change in circumstances since the time of the filing in that the petitioners no longer have an option contract for the purchase of the land in question, the Court will not order a useless act. The Court cannot order Mandamus in this case because plaintiffs could no longer operate a business at the location in question since they do not have an option to purchase the land, nor can they acquire such an option.

The Court therefore, in its review, finds that the Defendants City of Overland and its Board of Aldermen, were in violation of the plaintiffs' rights. The Court, in reviewing the decision of the Board of Aldermen, finds that they illegally withheld the business license. The Court reverses the decision of the Board of Aldermen. Because of the change in circumstances briefly alluded to, the Court will not order the issuance of the business license in question.

The trial court found that the expiration of respondents' option contract to purchase the property was a change in circumstances precluding the court from ordering a

business license be issued to respondents. Nothing in the record before the trial court indicates that respondents lacked the ability to revive or renew the sales contract. The sales contract with the expiration date was not an exhibit. No showing was made of the nature of Spetner's (the subsequent occupant) interest in the location. Thus, the record fails to establish the ownership status of the property.

■ This is not a case where the trial court was deciding an abstract question of law. The controversy over respondents' right to a business license was immediate and viable through all the proceedings. *Accord Triplett v. Grundy Electric Cooperative, Inc.*, 389 S.W.2d 401, 408[11, 12] (Mo.App.1965). Although it found it could not order a useless act since the time for the option contract had expired, the trial court properly granted respondents' petition for review.

The court further found respondents "could no longer operate a business at the location in question since they do not have an option to purchase the land, *nor can they acquire such an option*," and concluded it could not order mandamus, the alternative remedy respondents sought in count two of their lawsuit. We find nothing in the record to support the trial court's finding "nor can they acquire such an option" in its disposition of the mandamus action. As far as we are able to discern, it is a distinct possibility that respondents had, and continue to have, the ability to reacquire the premises at 1901 Brown Road. Despite the absence of evidentiary support in the record before us for this finding by the trial court, we agree with its final conclusion. We find its inability to order mandamus proper since mandamus was an alternative count and is an alternative remedy to the petition for review which the trial court granted. Section 536.-150 RSMo 1978. In light of this, the trial court's rationale for not ordering mandamus was mere surplusage, with no effect on our decision concerning the mootness of the petition for review.

■ A sub-point of appellants' argument urging us to find the action moot also challenges the trial court's finding that the Board acted arbitrarily and capriciously. Appellants fear that the trial court's decision may preclude them, under the doctrines of collateral estoppel and res judicata, from presenting those issues for relitigation in defense of respondents' lawsuit against them in federal court. Each of these doctrines applies only in specific circumstances. *See Lewis v. Barnes Hospital*, 685 S.W.2d 591, 593 (Mo.App.1985). The existence, nature, or status of any claim or claims against appellants by respondents in federal court is not part of this record. Hence, we decline any further discussion of this issue and summarily deny it.

Judgment affirmed.

STEWART, Senior J., and STEPHAN, J., concur.