**Doris RICE, Plaintiff/Respondent,**

v.

**The BOARD OF ADJUSTMENT OF the VILLAGE OF BEL–RIDGE, Defendant/Appellant.**

**No. 58216.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 26, 1991.

Michael J. McAvoy, Fenton, John J. Allan, St. Louis, for defendant/appellant.

Mulius H. Berg, St. Louis, for plaintiff/respondent.

GRIMM, Judge.

The Board of Adjustment of the Village of Bel–Ridge appeals the trial court's order reversing the Board's decision which denied Doris Rice's request for an occupancy permit to operate a day-care facility in an area zoned "Local Business District." We reverse the trial court's judgment and remand. We direct the trial court to remand to the Board of Adjustment for further proceedings in accordance with this opinion.

## I. The Facts

■ We review the Board of Adjustment's action and not the judgment of the circuit court. *Cunningham v. Bd. of Aldermen of Overland,* 691 S.W.2d 464, 466 (Mo.App.E.D.1985). "Generally, our review is limited to a determination of whether the Board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction." *Id.* Where, as here, the issue presents a question of law, it is a matter for the independent judgment of the reviewing court. *Stephenson's Rest. v. Mo. State H. & T. Comm'n,* 666 S.W.2d 437, 440 (Mo.App.W.D.1984).

Mrs. Rice, operator of a preschool center in University City, decided to open a second center. She found a building in Bel–Ridge which she liked because it is "easily accessible from Highway 70 and Interstate 170." She also determined there were "lots of small children" in the community.

On May 25, 1989, she contracted to purchase the building; the contract contained a "conditional use contingency." Mrs. Rice said she "went to Bel–Ridge City Hall, and they told [her] that [she] would have to have an occupancy permit, but prior to that, [she] would have to go before [planning and zoning]."

On July 17, Mrs. Rice filed an application for an occupancy permit. The Planning and Zoning Board told her the location she had selected was zoned "E" and day care facilities could not be located in that zoning district. She was told she would have to go before the Board of Trustees.

Mrs. Rice attended the July and August meetings of the Board of Trustees. Numerous concerns were raised, and Mrs. Rice was asked to furnish additional information.

On September 7, Mrs. Rice wrote to the chairman of the Board of Trustees. Her three-page letter addressed previously raised concerns about traffic, number of children to be served, transportation of children, and state licensure.

The Village's attorney responded to Mrs. Rice's letter. He confirmed what he had previously told her, that the Village's zoning code "precludes the operation of a day care center in a commercially zoned area." He went on to say that the only way for her to receive permission was to have the Board of Trustees "amend [the zoning ordinance] to make it a permissive use."

Mrs. Rice took her building plans to the Village's clerk, who passed them on to the Village's attorney. On September 22, the Village's attorney wrote to Mrs. Rice:

> However, I want to make very clear to you that the property in question at 9026 Natural Bridge is in a commercially zoned area. That means that Ordinance 150 does not allow this property to be used as a day care center. Should planning and zoning approve your plans, it will not be able to have any effect on your ability to use 9026 Natural Bridge for a day care center. This is clearly a proscribed use.

Mrs. Rice appeared before the Board of Trustees again. On October 3, the Board of Trustees denied the occupancy permit.

Mrs. Rice appealed to the Board of Adjustment, and a hearing was held November 9. Before reviewing that proceeding, we look at the ordinance.

Bel–Ridge Ordinance No. 150, the village's zoning ordinance, was adopted in 1960. It specifically defines the term "Day Care Home or Nursery" as: "A place where children are cared for and maintained during the daytime with or without compensation." Day Care Home or Nursery is a permitted use in zoning districts "A" and "B," single family districts.

The building Mrs. Rice purchased is located in zoning district "E," local business district. Section 2 of this part of the ordinance limits use of buildings or premises to "the following purposes"; a day care center is not listed among the purposes.

Mrs. Rice claims her intended use falls under paragraph 2, Section 2, which authorizes:

> Service facilities serving neighborhood needs, *such as and including* barber,

beauty shop, medical and dental office, photographer, restaurant, radio, television and appliance repair, self-service laundry, shoe repair, tailor, laundry and/or dry cleaning collection and distribution station, except the sale of alcoholic beverages for consumption on the premises. (emphasis added).

At the Board of Adjustment hearing, the Village's attorney served as the Board's counselor. In his opening statement, the Village's attorney stated the Village's position was "that the uses that are permitted for each specific zone are categorized within Ordinance 150, and under Article 7, Section 2, Subsection 2, there is no applicability to a day care center or a nursery school mentioned within that category. *It is the Village's position that in order for this to be a permitted use within the commercial zone, that it must be specified within Ordinance 150.*" (emphasis added).

On the other hand, Mrs. Rice's attorney said it was their contention the language: "Service facilities serving neighborhood needs, such as and including" did not preclude "a day or pre-nursery school, an educational type of institution that Mrs. Rice wants to operate." He viewed the issue as one of fact and contends the facts of the proposed use support a finding Mrs. Rice will operate a facility serving neighborhood needs.

A hearing was then conducted. During cross-examination of Mrs. Rice, the Village's attorney asked if she did not recall him telling her "that it was not an allowed use?" Mrs. Rice replied that he "did indicate to me that it was not an allowed use."

In closing remarks, Mrs. Rice's attorney said: "All we are asking for is a proper construction of an ordinance, and that's it, ...." The Village's attorney said that "it is my opinion—and I am speaking as the Village attorney—that the use is not an allowed use that has been applied for, that the denial of the application for a permit was proper,...." Further, he said that "*without regard to the evidence* that you

took or the discussion ..., I think it is not an allowed use. I do not believe that there was error in the denial of the permit, and therefore, this Board should and must deny this appeal." (emphasis added).

After considerable discussion between the Board members and the attorneys, the attorneys agreed that the issue before the Board was whether denial of the permit based on improper zoning for the particular use applied for should be sustained or overridden. Three members vote to override, while two voted to sustain. The application was deemed denied.* Mrs. Rice appealed to the circuit court, which overruled the Board's decision.

## II. The Board's Determination

The specific question considered by the Board was a question of law, i.e. does the city zoning ordinance prohibit all day care centers in the Village's local business district, zoning district "E". The Village took the position that it did, and stipulated that the sole basis for the denial "was the improper zoning for this particular use."

Six principles of construction of a zoning ordinance are noted in *Coots v. J.A. Tobin Constr. Co.*, 634 S.W.2d 249, 251–252 (Mo.App.W.D.1982). We mention two, (1) the determination of what uses are permitted must be made on the basis of the wording of the particular ordinance, and (2) zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority.

It is clear that a day care center is not one of the enumerated uses in zoning district "E," local business district. The question then is whether, as the Village contends, because a day care center is not mentioned, a day care center is prohibited as a matter of law in zoning district "E."

We first observe that churches are permitted in zoning district "E" by section 2, paragraph 3. Further, section 2, paragraph 5, permits "uses customarily incident

---

* Although the vote was three to two in favor of granting the permit, four favorable votes are required to overturn the Village Board of Trustee's denial of the permit. § 89.090.2, RSMo 1986.

to the above uses." In *City of Richmond Heights v. Richmond Heights Presbyterian Church*, 764 S.W.2d 647 (Mo.banc 1989), our supreme court found that a church operated day care center met the zoning ordinance's definition of "accessory use." Arguably, a church operated day care center is a use customarily incident to a church. Thus, it is questionable that all day care centers may be prohibited in zoning district "E."

■ Turning to the wording of the ordinance, Section 2, paragraph 2, says, "Service facilities serving neighborhood needs, such as and including ..." are permitted. Article II of the Village's zoning ordinance is the "Definitions" section. Although it contains sixty-two definitions, it does not define the terms "Service facilities" or "serving neighborhood needs." Thus, these words are construed in accordance with their natural and ordinary meaning. *St. Louis County v. State Highway Comm'n*, 409 S.W.2d 149, 152 (Mo.Div. 2 1966).

"Service" has many meanings. One meaning of "service" is "useful labor that does not produce a tangible commodity." Webster's Third New International Dictionary (1976). Utilizing this definition, a "day care center" is a service facility.

Is Mrs. Rice's proposed day care center one that will be "serving neighborhood needs?" This is a question of fact, for a day care center could either serve, or not serve, neighborhood needs. In order to make this determination, the Board must make a decision based on the evidence.

This question of fact was not decided by the Board. We say this because the Board was told by the Village's attorney who also was acting as the Board's attorney that the sole basis for denial of the permit "was the improper zoning for this particular use." Or, in the words of the Village's–Board's attorney, "without regard to the evidence that you took ..., it is not an allowed use."

The Board argues that the words of the ordinance, "such as and including," indicates the Village legislators intent. It argues the legislators "did not view a day care or nursery school to be a service facili-ty serving neighborhood needs *such as* (emphasis added by Board) those businesses" specifically identified.

We disagree. The term "including" is ambiguous, and its meaning may vary according to its context. *Union Elec. Co. v. Cuivre River Elec. Co-op*, 571 S.W.2d 790, 794 (Mo.App.E.D.1978); *St. Louis County*, 409 S.W.2d at 153. Ordinarily, it is not a word of limitation, but rather of enlargement. "When used in connection with a number of specified objects, it implies that there may be others which are not mentioned." *Id.*

Here, the ordinance says "Service facilities serving neighborhood needs, such as and including barber, beauty shop, medical and dental office, photographer, [and nine other businesses]." If the Village intended the listed businesses to be the only permitted businesses, it would not have said "such as and including." Instead, it could have said "limited to." It chose not to do so, no doubt recognizing the nearly impossible task of listing all specifically permitted businesses.

■ We conclude that paragraph 2, section 2, of Article VII of the zoning ordinance does not restrict the uses to those specifically enumerated. The wide variety of listed businesses, from medical offices to shoe repair, indicates the businesses have little in common. The only thing they have in common is that they are "service facilities serving neighborhood needs."

The cause is remanded to the Circuit Court with directions that it remand to the Board of Adjustment. The Board of Adjustment shall consider and hear evidence on Mrs. Rice's application, including whether the proposed day care center will be a service facility serving neighborhood needs. In accordance with § 89.090.2, RSMo 1986, the Board shall "make such order, requirement, decision or determination as ought to be made."

PUDLOWSKI, P.J., and KAROHL, J., concur.