979 F.2d 130
 William Wentworth FOSTER; Charles Harvey; Richard Hughes,
Jr.; John H. Moss; Harold Nelson; Edward H.
Pennington; R. Eugene Roberts; Kirby
Rogan, Appellants,
v.
Gale HUGHES, Appellee,
Jefferson Bank & Trust, Defendant,
George Lombardi; Dale Riley, Appellees.
 No. 92-1253.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 17, 1992.
Decided Nov. 5, 1992.
Rehearing Denied Dec. 16, 1992.
 
 Dennis J. Owens, Kansas City, Mo., for appellant.
 Bruce Farmer, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Whether state regulations that prohibit prison inmates to place their money in private interest-bearing accounts violate the prisoners' constitutional rights is the issue presented in this case. We believe they do not, and affirm.
 
 I.
 
 2
 The Missouri Department of Corrections does not allow inmates to open or continue to make deposits to checking or savings accounts held in the individual inmate's name.[1] Instead, the Department itself keeps individual accounts for each inmate, and pools all inmate funds for deposit in a non-interest-bearing account. The bank at which the Department deposits inmate funds will not pay interest on that account because of the high volume of small transactions involved. The Department does, however, allow inmates to purchase United States Savings Bonds with funds received while in prison.
 
 
 3
 Appellants filed the instant 42 U.S.C.A. § 1983 lawsuit on September 10, 1987, claiming that the State of Missouri arbitrarily denied them the right to place their monies in private, interest-bearing accounts and required them to maintain those funds in an account that did not bear interest.[2] They seek only monetary damages, not injunctive relief.
 
 
 4
 The procedural history of this lawsuit is tortuous, to say the least; we need consider only the grant of summary judgment presently appealed. On July 23, 1991, the magistrate judge[3] recommended that the defendants' motion for summary judgment be granted. By order filed November 29, 1991, the district court[4] accepted the recommendation and granted the motion for summary judgment. This appeal followed.
 
 II.
 A. Procedural Due Process
 
 5
 The magistrate judge held that the inmates did not state a procedural due process claim because they could show no protected property interest and because adequate state post-deprivation remedies existed. We agree that the inmates do not state a procedural due process claim, but for a different reason. Persons are entitled to procedural due process, in the form of an individual opportunity to be heard, only when the government makes an individualized determination, not when the government commits a legislative act equally affecting all those similarly situated. See Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445-46, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); Minnesota Bd. for Community Colleges v. Knight, 465 U.S. 271, 283, 104 S.Ct. 1058, 1065, 79 L.Ed.2d 299 (1984); Collier v. City of Springdale, 733 F.2d 1311, 1316 (8th Cir.), cert. denied, 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984). Here, the Missouri Department of Corrections has adopted, pursuant to a legislative delegation of authority, a general rule that no inmates shall open private depository accounts. Application of this rule does not depend upon facts and circumstances surrounding each inmate. The Department's action, sanctioned by the state legislature, has given these inmates all the procedure to which they are entitled.
 
 B. Substantive Due Process
 
 6
 These inmates actually raise only a substantive due process claim: that the State of Missouri does not have the authority, consistent with the Constitution, to promulgate and enforce this regulation. To sustain this claim, the inmates must prove that (1) the Constitution grants to them as prisoners the right to earn interest on money received while in prison, and (2) the regulations in question violate this right.
 
 
 7
 Assuming, arguendo, that these prisoners have a right to earn interest on money received while in prison, we conclude that the prison regulations in question are legitimately related to valid penological purposes, and thus do not violate this right.
 
 
 8
 The Supreme Court set forth its test for the constitutionality of restrictions upon prisoners' rights in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). First, there must be a rational connection between the prison regulation and the legitimate government interest that supports the regulation. Id. at 89, 107 S.Ct. at 2261. Second, in determining the reasonableness of a prison restriction, the court must examine whether alternative means of exercising the right in question remain open. Id. at 90, 107 S.Ct. at 2262. Third, courts must consider the impact accommodations to the right would have upon guards, inmates, and the allocation of prison resources. Id. Finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. Examination of the regulations in question and the justifications provided convinces us that they are reasonable.
 
 
 9
 First, the state provided several legitimate reasons supporting the regulations in question. George Lombardi, Director of the Division of Adult Institutions, Missouri Department of Corrections, stated in an affidavit that a prohibition of private depository accounts is necessary to (1) deter escapes by preventing inmate access to available funds outside the prison; (2) enforce prison rules against inmate possession of cash and prevent "strong arming" and extortion of funds from weaker inmates; (3) prevent inmate fraud upon those outside the prison; and (4) prevent use of inmate funds for illegal purposes such as gambling, drugs or gang activities. Aff. of George Lombardi, Feb. 26, 1991. Cf. Blankenship v. Gunter, 898 F.2d 625, 628 (8th Cir.1990) (inmate accounts must be closely monitored because of legitimate security concerns such as "preventing gambling, contraband, and coerced expenditures"). Prohibiting private inmate accounts advances the legitimate penological interest in prohibiting such activities and therefore is rationally related to that interest.
 
 
 10
 Second, the prison provides inmates with an alternative method of earning interest on their funds. Inmates may purchase United States Savings Bonds, and many have in fact done so.[5]
 
 
 11
 Third, providing the inmates access to private accounts would seriously burden prison operations. In addition to assisting the prohibited activities mentioned above, allowing individual depository accounts would greatly increase record keeping burdens on prison staff by increasing the number of transactions between state and individual accounts. Presently, each inmate receives a monthly stipend, which is credited to his inmate account. He then can use this account to purchase items from the prison canteen. If each prisoner had a private account, he would have to deposit money from his private account into his prison account to make such purchases. Jerome Weiler, inmate finance officer, stated that the Missouri Department of Corrections currently maintains accounts for more than 15,800 inmates, at a cost exceeding $100,000. Weiler further stated that a substantial increase in the number of transactions involving inmate accounts would require employment of additional staff and would increase program costs. Aff. of Jerome Weiler, Nov. 11, 1991. Moreover, such additional transactions could expose the Department to further litigation. Preventing such a drain of prison resources through litigation provides a legitimate basis to restrict individual accounts. See United States v. Stotts, 925 F.2d 83, 88 (4th Cir.1991).
 
 
 12
 Finally, there are no ready alternatives to the system presently in place. Inmate finance officer Jerome Weiler stated that banks are unwilling to pay interest on the current pooled inmate accounts because of the high volume of small transactions involved. Aff. of Jerome Weiler, Mar. 10, 1988. See also Aff. of Philip D. Baker, Mar. 10, 1988 (bank vice president stated the cost of individual interest-bearing accounts for each inmate would be exceptionally high). Plaintiffs have failed to identify banks that would offer them interest-bearing savings accounts, considering their minimal average daily balances and repeated transactions. Inmates presently can purchase savings bonds, and any other method would fail to serve the objectives noted above. Moreover, "[w]e reject the notion that prison officials must first anticipate and then refute every conceivable alternative method of accommodating inmate constitutional complaints in order to withstand a court's reasonableness inquiry." Blankenship, 898 F.2d at 628.
 
 III.
 
 13
 Upon consideration of all the circumstances, we conclude that if these prisoners have any right to interest upon their funds while in prison, the regulations in question do not unconstitutionally infringe that right.
 
 
 
 [1]
 The regulations in question provide as follows:
 A. CHECKING ACCOUNTS
 Inmates confined to the Department of Corrections shall not open nor continue to make deposits to any checking account in his/her name or in any other individuals name. The Department of Corrections provides an inmate banking system for the purpose of handling all monies for each inmate during confinement.
 B. INMATE SAVINGS BOND PROGRAM
 While confined to the department, inmates shall not open nor continue to make deposits to a savings account at any outside banking financial institution. The department provides an adequate savings system through the United States Savings Bond program, which will allow an inmate's funds to accumulate interest.
 Departmental Manual, Procedure No. D 3-5.1, § III(A)(B). The Department adopted these regulations pursuant to a delegation of authority from the Missouri Legislature to create "policy" regarding inmates' property. See Mo.Ann.Stat. §§ 217.040, 217.197 (Vernon Supp.1992).
 
 
 [2]
 A survey of the average daily balance in the prison account of each plaintiff prisoner revealed balances as follows: $4.65; $6.23; $14.96; $15.59; $18.24; $24.12; $81.08; and $122.18
 
 
 [3]
 The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri
 
 
 [4]
 The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri
 
 
 [5]
 See Aff. of Jerome Weiler, Nov. 11, 1991