949 F.Supp. 731 (1996)
Valerie TOWNES, Plaintiff,
v.
CITY OF ST. LOUIS, Defendant.
No. 4:94 CV 75 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 6, 1996.
*732 Valerie Townes, St. Louis, MO, pro se.
James L. Matchefts, St. Louis City Counselor Office, St. Louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court sua sponte.[1] The parties have consented to the exercise of authority by a United States Magistrate Judge under 28 U.S.C. § 636(c)(3). During a hearing held on October 27, 1995, the court gave notice to the parties that the court would reconsider plaintiff's motion for summary judgment and was considering granting judgment in favor of either party. In addition to this notice, the court gave the parties further opportunity to present evidence on their respective positions. Interco Inc. v. National Surety Corp., 900 F.2d 1264, 1269 (8th Cir.1990).
Plaintiff Valerie Townes commenced this action pro se against the defendant City of St. Louis (the city), alleging that her federal constitutional rights were violated and seeking redress under 42 U.S.C. § 1983. In her amended complaint filed August 1, 1994, plaintiff alleges that on December 6, 1993, the city by ordinance authorized the placement of large flower pots across the entry to the 6100 block of Garesche Avenue, thereby closing that block to vehicular traffic from the 6000 block of Garesche Avenue. Construing plaintiff's pleadings liberally, plaintiff alleges that the city's actions violated her substantive due process rights (her right to intrastate travel), her procedural due process rights and her right to equal protection of the law, all in violation of the Fourteenth Amendment.
*733 The city argues that plaintiff's federal constitutional rights have not been violated. From the record proffered by the parties, the court finds the following facts undisputed:

FACTS
1. Plaintiff Valerie Townes resides in the 6000 block of Garesche Avenue in the City of St. Louis. See Defendant's Exh. B, ¶ 7, filed Dec. 12, 1994.
2. On December 15, 1993, the city enacted Ordinance 63038. The provisions of the ordinance are as follows:
An ordinance authorizing the Director of Streets to temporarily close the 6100 block of Garesche at the east end of Garesche where it intersects with Mimika Avenue for a period of six (6) months, and containing an emergency clause.
Wherefore, the closing of the 6100 block of Garesche where it intersects with Mimika Avenue, the barrier, should allow for residents to circle the street, enter from and exit via Goodfellow Avenue, will enhance and increase the stability of the neighborhood adjacent to said streets.
BE IT ORDAINED BY THE CITY OF ST. LOUIS AS FOLLOWS:
SECTION ONE. The Director of Streets is hereby authorized to temporarily close 6100 block of Garesche where it intersects Mimika Avenue for a period of six (6) months.
SECTION TWO. This Ordinance, being necessary for the immediate preservation of the public health, safety and general welfare, shall be and is hereby declared to be an emergency measure within the meaning of Article IV, Sections 19 & 20, of the Charter of the City of St. Louis, and as such shall take effect immediately upon its approval by the Mayor.
Approved: December 15, 1993.
See Defendant's Exh. A, filed Dec. 12, 1994. The barriers erected by the city have remained installed longer than the initial six-month period of time. See Defendant's Exh. C, filed Dec. 12, 1994.
3. Ordinance 63038 was enacted and the traffic barriers were erected at the request of area residents, including those who resided in the 6100 block of Garesche Avenue. These residents had complained to the city's Board of Aldermen that there was heavy vehicular traffic through the 6100 block of Garesche which caused drug trafficking, burglaries, vandalism, and prostitution. The residents believed that reducing vehicular traffic through the 6100 block of Garesche could solve the criminal activity and stabilize the neighborhood. After the barriers were erected, the amount of crime in the 6100 block of Garesche was substantially reduced and the neighborhood became more stable. See Defendant's Exh. B, filed Dec. 12, 1994.
4. Before the enactment of Ordinance 63038, the 6000 block of Garesche was a one-way street going west to the intersection of Garesche with Mimika. After the enactment of the ordinance and the erection of the barriers at the entrance to the 6100 block of Garesche, traffic in the 6000 block of Garesche continued one-way west to the intersection with Mimika. The only change effected by the ordinance is that the traffic barriers do not allow traffic to continue west past Mimika into the 6100 block of Garesche. Traffic continues to flow north and south on Mimika Avenue. See Defendant's Exhs. B, C, 1, filed Dec. 12, 1994.
5. As a result of the barriers, plaintiff cannot directly drive down Garesche Avenue to Goodfellow Avenue. Instead, plaintiff must turn north or south onto Mimika Avenue. Then plaintiff must drive one block on Mimika Avenue, turn west, and drive the remaining one block to Goodfellow Avenue. (Id.)
6. Plaintiff's access to her home is not affected by the barrier, because Garesche Avenue is a one-way street heading west. Plaintiff has always been required to drive west down the 6000 block of Garesche from the east to drive to her home. Thus, plaintiff's access to municipal services, such as police and fire protection, has not been affected by the barriers. See Defendant's Exh. B, filed Dec. 12, 1994.

DISCUSSION
This court must grant summary judgment, if the evidentiary record and showing of evidence *734 establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wabun-Inini v. Sessions, 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)). Plaintiff, as the moving party, must inform the court of the basis for her motion and identify those portions of the record which show that there is no genuine issue for trial. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). Any doubt as to the existence of an issue of material fact must be resolved in favor of the party opposing the motion. Board of Education, Island Trees Union Free School Dist. v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982).
Once a motion for summary judgment is properly made and supported, the non-moving party must show evidence of specific facts sufficient at least to show that there is a genuine issue of material fact for trial. Fed. R.Civ.P. 56(e); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce sufficient proof of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-24, 106 S.Ct. at 2552-53. If, however, the plaintiff having moved for summary judgment, the court is convinced that there is no genuine issue of material fact and that the defendant is entitled to judgment, judgment may be entered in the non-moving defendant's favor. Cf. Johnson v. Bismarck Public School Dist., 949 F.2d 1000, 1004-05 (8th Cir.1991); 10A Charles A. Wright et al., Federal Practice and Procedure § 2720, at 29-34 (1983).

Substantive due process
Plaintiff claims that defendant's placement of large flower pots across the entry to the 6100 block of Garesche infringes her right to intrastate travel under the substantive branch of the Due Process Clause of the Fourteenth Amendment. Defendant argues that there is no federal constitutional right to intrastate travel and, even if one existed, the ordinance would not restrict this right.
While the Supreme Court has addressed the right to travel between states, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (striking down a durational residency requirement for welfare benefits), it has not determined whether there is a fundamental right to intrastate travel. Lutz v. City of York, Pa., 899 F.2d 255, 260 & n. 8 (3rd Cir.1990); cf. Detroit Police Officers Association v. City of Detroit, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972) (dismissing appeal of 385 Mich. 519, 190 N.W.2d 97 (1971) for lack of a substantial federal question); Memorial Hospital v. Maricopa County, 415 U.S. 250, 254-56, 94 S.Ct. 1076, 1080-81, 39 L.Ed.2d 306 (1974). This court has found no reported opinion of the Eighth Circuit where that court decided whether intrastate travel was a constitutional right. Other federal circuit courts have decided the issue variously.
The First, Second, and Third Circuits recognize such a right generally. See Lutz v. City of York, Pa., 899 F.2d 255, 268 (3d Cir.1990); King v. New Rochelle Municipal Housing Authority, 442 F.2d 646, 648-49 (2d Cir.) (invalidating a five-year residency requirement for admission to public housing), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971); Cole v. Housing Authority of Newport, 435 F.2d 807 (1st Cir.1970) (right to travel interstate and intrastate assumed to have a constitutional source; invalidating a two-year residency requirement for applicants to federally-aided, low-rent, public housing).
The Fifth, Sixth, and Seventh Circuits have not recognized a fundamental right to intrastate travel. See Andre v. Board of Trustees, 561 F.2d 48, 53 (7th Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978); Wardwell v. Board of Education, 529 F.2d 625, 627 (6th Cir.1976); Wright v. City of Jackson, Miss., 506 F.2d 900, 902-03 (5th Cir.1975) (validating an ordinance which required city employees to live within the city, because of no fundamental "right to commute").
Only the Third Circuit has decided that this right includes a right to localized movement. *735 Lutz v. City of York, Pa., 899 F.2d at 268. In Lutz, the city of York enacted an ordinance prohibiting "cruising." Plaintiffs sought declaratory and injunctive relief claiming that the ordinance violated their right to intrastate travel. The court examined seven possible constitutional sources for the right and concluded "no constitutional text other than the Due Process Clauses could possibly create a right of localized intrastate movement...." Id. at 267. The court then used Justice Scalia's extremely narrow test of substantive due process which states that:
the Due Process Clause substantively protects unenumerated rights "`so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" ... [T]he relevant traditions must be identified and evaluated at the most specific level of generality possible.
Id. at 268 (quoting and citing Michael H. v. Gerald D., 491 U.S. 110, 122, 127 n. 6, 109 S.Ct. 2333, 2344 n. 6, 105 L.Ed.2d 91 (1989)) (Scalia, J., plurality opinion). In conclusion, the Third Circuit held "that the right to move freely about one's neighborhood or town, even by automobile, is indeed `implicit in the concept of ordered liberty' and `deeply rooted in the Nation's history.'" Lutz, 899 F.2d at 268.
The Third Circuit in Lutz adopted an intermediate scrutiny standard for review of legislation which affects intrastate travel:
The cruising ordinance will be subjected to intermediate scrutiny, and will be upheld if it is narrowly tailored to meet significant city objectives.
Id. at 270. After applying this standard, the court upheld the ordinance prohibiting cruising:
We believe that the cruising ordinance passes muster as a reasonable time, place, and manner restriction on the right of localized intrastate travel. York's interests in ensuring public safety and reducing the significant congestion caused by cruising are plainly significant. The ordinance is limited in its scope to locations undisputedly affected by the current cruising problem, and it leaves open ample alternative routes to get about town without difficulty. It prohibits only certain repetitive driving around the loop, and it prohibits no one from driving outside the loop, or from driving to the loop and then walking anywhere inside the loop  a distance no more than several blocks. Under these circumstances, we conclude that the ordinance is narrowly tailored to combatting the safety and congestion problems identified by the city.
Lutz, 899 F.2d at 270.
In the case at bar, the defendant city relies upon a recent holding of the Eighth Circuit Court of Appeals that it has traditionally "placed a heavy burden on those wishing to extend substantive due process into new arenas." Brown v. Nix, 33 F.3d 951, 954 (8th Cir.1994). In light of this expressed reluctance to expand substantive due process rights, defendant argues that it is highly improbable that the Eighth Circuit would recognize local intrastate travel as a fundamental right or a liberty interest.
The right to travel asserted by plaintiff involves substantial personal interests.
The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are basic values `implicit in the concept of ordered liberty' protected by the due process clause of the fourteenth amendment.
Bykofsky v. Borough of Middletown, 401 F.Supp. 1242, 1254 (M.D.Pa.1975), aff'd, 535 F.2d 1245 (3d Cir.) (table), cert. denied, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976).
Even if this court were to conclude that a federal constitutional right to localized intrastate travel exists, the intermediate scrutiny test espoused in Lutz v. City of York, Pa., 899 F.2d at 268-270, is the proper standard for determining the constitutionality of Ordinance 63038. Lutz, 899 F.2d at 270. The intermediate scrutiny test validates restrictions of the right to intrastate travel that are narrowly tailored to further "significant city objectives." Lutz, 899 F.2d at 270. The relevant factors are the time, place, and manner of the restrictions. Id. at 269. In Lutz, an anti-cruising ordinance was *736 passed to reduce traffic and to ensure public safety by outlawing unnecessary, repetitive driving on two major thoroughfares between 7:00 p.m. and 3:30 a.m. Id. at 257, 270. Because the ordinance was limited to areas undisputedly affected by the cruising problem and because alternate routes to the areas were available, the court validated the statute. Id. at 270.
The relevant characteristics of Ordinance 63038 bear great resemblance to the ordinance in Lutz. Like that ordinance, Ordinance 63038 was passed as a public safety measure to enhance the stability of the neighborhood of the affected street. The vehicular traffic on Garesche Avenue was related to substantial crime problems and for this reason neighborhood residents wanted vehicular traffic curtailed. As in Lutz, alternate routes are available in place of the sole restriction, which is a limitation of direct access to Goodfellow Avenue from the 6000 block of Garesche Avenue down the 6100 block. Instead, plaintiff can turn north or south onto Mimika Avenue, drive one block on Mimika Avenue, turn west, and then drive one block to Goodfellow Avenue. It is also noteworthy that plaintiff's access to other travel routes or public services, such as police and fire protection, are not affected. Plaintiff is marginally inconvenienced at best. The placement of a single set of traffic barriers indicates a desire to only marginally inconvenience a minimal number of people. Any right plaintiff has to intrastate travel was not violated by the ordinance.
Plaintiff argues that, "[i]f prostitution, drug dealing, and other criminal activities were problems in the 6100 block of Garesche, the residents of [that block] should have contacted their local police." See Answer (reply to defendant's response), filed December 16, 1994. The existence of this alternative method of dealing with the criminal activity in the 6100 block (e.g., increased police patrolling) may be relevant as a limitation on the authority of the city to act, if the court was required to subject the ordinance to strict constitutional scrutiny. Lutz, 899 F.2d at 269. But, such scrutiny is not required in this case. Id.
The ordinance is also valid under the rational basis test.
A plaintiff asserting a substantive due process claim must establish that the government action complained of is "truly irrational", that is, "something more than ... arbitrary, capricious, or in violation of state law."
Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir.1993) (quoting Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir.1992)), cert. denied, 510 U.S. 1113, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). In Chesterfield Development, the Eighth Circuit provided an example of an irrational law  the application of a zoning ordinance only to persons whose names begin with the first letter of the alphabet. Chesterfield, 963 F.2d at 1104. Such laws "shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity." Brown, 33 F.3d at 953.
The provisions of Ordinance 63038 are rationally related to its purpose, the reduction of criminal activity related to the heavy vehicular traffic on Garesche Avenue. The city, motivated by neighborhood concerns about crime, sought to reduce vehicular traffic on Garesche Avenue. Without a direct outlet to a major thoroughfare, motor vehicle drivers would avoid Garesche Avenue, thereby reducing traffic. Thus, there was a rational basis for the placement of the flower pot barriers. Following the installation of the barriers, the crime rate dropped dramatically and the neighborhood became more stable.

Procedural due process
Plaintiff alleges that the residents in the 5900-6000 block of Garesche were not notified of the closing of the street and were not given the opportunity to vote on the issue.
In analyzing a due process claim, the court must first determine whether the plaintiff has been deprived of a liberty or property interest protected by the Constitution of the United States. Walker v. Sumner, 14 F.3d 1415, 1419 (9th Cir.1994). If so, the court must determine whether the procedures used were constitutionally sufficient. Id.
*737 Even assuming that plaintiff was deprived of a liberty or property interest, her claim must fail. The ordinance in this case constituted a legislative act that affected plaintiff and all others similarly situated on her block. Therefore, she had no right to individual notice or a hearing before the ordinance was adopted. Foster v. Hughes, 979 F.2d 130, 132 (8th Cir.1992) ("Persons are entitled to procedural due process, in the form of an individual opportunity to be heard, only when the government makes an individualized determination, not when the government commits a legislative act equally affecting all those similarly situated."). See Minnesota Board for Community Colleges v. Knight, 465 U.S. 271, 283-84, 104 S.Ct. 1058, 1065-66, 79 L.Ed.2d 299 (1984); Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 445-46, 36 S.Ct. 141, 142-43, 60 L.Ed. 372 (1915).

Equal protection
Plaintiff alleges that she is a black American who is protected by the laws and whose rights were denied when she was subjected to the road closing. She alleges that the erection of the barriers had a discriminatory impact on her and the other residents of her block. She believes that the residents of the 6100 block, who requested the barriers, wanted to create a private street but with publicly-paid city services, such as garbage collection, still in place.
Under the Equal Protection Clause, an ordinance is subject to "strict scrutiny" only if it disadvantages a suspect class or impinges upon a fundamental right. Plyler v. Doe, 457 U.S. 202, 216-17, 102 S.Ct. 2382, 2394-95, 72 L.Ed.2d 786 (1982). A statute that does not involve a suspect class or a fundamental right enjoys a strong presumption of validity, and will survive an equal protection challenge if it is rationally related to a legitimate governmental purpose. FCC v. Beach Communications, Inc., 508 U.S. 307, 313-14, 113 S.Ct. 2096, 2100-02, 124 L.Ed.2d 211 (1993); Independent Charities of America, Inc. v. State of Minnesota, 82 F.3d 791, 797 (8th Cir.1996). When a race-neutral statute is challenged on the ground that it has a disproportionate adverse effect upon racial minorities, the court must determine if the adverse effect reflects invidious race-based discrimination. See Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 274, 99 S.Ct. 2282, 2293-94, 60 L.Ed.2d 870 (1979). The court has already concluded that the provisions of the ordinance are rationally related to its purpose. Plaintiff stated at the hearing held on this matter that she was not alleging that the city's action was based on race or that the action disadvantaged her because of her race. Therefore, this claim must fail.
For these reasons, the court concludes that there is no genuine issue of material fact and that the defendant city is entitled to judgment as a matter of law.
NOTES
[1] On October 25, 1994, the court ordered that the document filed by plaintiff on October 12, 1994, captioned "Answer," be treated as a motion for summary judgment. On September 5, 1995, the court denied without prejudice plaintiff's motion for summary judgment. On October 31, 1995, the court ordered defendant to file a supplement to its response to plaintiff's motion for summary judgment, or to file a motion for summary judgment. On November 20, 1995, defendant filed a supplemental memorandum in response to plaintiff's motion for summary judgment. On November 24, 1995, plaintiff filed a response to defendant's supplemental memorandum.