John A. **HEUER**, individually and as Personal Representative of the Estate of Ivan Heuer, Deceased, Appellant,

v.

**CITY OF CAPE GIRARDEAU, Respondent.**

**No. ED 96721.**

Missouri Court of Appeals,
Eastern District.

May 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 2012.

Application for Transfer Denied Aug. 14, 2012.

Tom K. O'Loughlin, Cape Girardeau, MO, for appellant.

Mary Eftink Boner, Jackson, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

## Introduction

Appellant John Heuer [1] (Heuer) appeals the judgment of the trial court denying Heuer's petition for removal of a fence erected in an alley at the rear of his property. Heuer argues the placement of the fence failed to comply with city ordinances and resulted in a violation of Heuer's constitutional rights. We reverse and remand.

## Background

In 1999, Heuer acquired two lots of property fronting on Frederick Street just north of Highway 74 in the City of Cape Girardeau, Missouri (City). Heuer acquired a third adjoining lot in 2011, just before the trial in this matter. All of Heuer's lots were zoned as residential property. Immediately to the west, along the rear side of Heuer's lots, is an alley that runs in a north-south direction, parallel to Frederick Street. On the other side of the alley, along Sprigg Street, sits a parcel of property, which is zoned as commercial property, owned by JJP Investments, LLC (JJP).

In 2005, JJP undertook a development project to build a Rhodes 101 Convenience Store. As part of that project in 2006, JJP requested permission to pave the alley between JJP's and Heuer's properties. The City allowed JJP to pave the alley, but required JJP to sign a license and indemnity agreement, making JJP responsible for any liability the City might incur for damages resulting from the paving of the alley. Additionally, the City reserved the right to require JJP to remove any improvements made to the alley upon 30 days' notice. JJP notified Heuer of the paving of the alley, and Heuer did not object to the project.

JJP also received notice from the City that the following ordinance ("buffer ordinance") required JJP to erect a fence at the rear of its property:

> At such time as a lot which is zoned commercial or industrial is developed adjacent to a lot which is zoned residential, a permanent screening ... at least six (6) feet in height shall be installed by the developer of the commercial or industrial zoned lot. The screen shall be installed on the lot line between the commercial or industrial lot and the residential lot.

Section 30–42(e), Cape Girardeau Code of Ordinances (2006). JJP requested to build the fence on the east side of the alley, closer to Heuer's lots. The City Council

---

1. Heuer appeals on behalf of himself and the estate of his brother, Ivan Heuer, who is deceased. We refer to both appellants singularly as "Heuer" throughout this opinion for ease of reference, but with no intended disrespect.

then adopted a resolution authorizing the City to enter into a license and indemnity agreement with JJP to build the fence in that location, noting that the reason for JJP's request to place the fence on the east side of the alley was that "th[e west] section of the alley will be paved to use as part of the drive thru." The license and indemnity agreement again reserved to the City the right to require JJP to remove the fence upon 30 days' notice. The fence has four gated openings, one at the rear of each of the four residential lots along the fence. As a result of the project, the grade of the alley changed, and there was a "lip" constructed on the east side of the alley.[2] Heuer was not aware the fence would be built, and he learned of its existence only after the project was finished.

Heuer filed suit against JJP and the City for removal of the fence. The following photographs of the fence and the changed alley were admitted as exhibits at trial:

**2.** We are informed in Heuer's brief that since trial, the parties have amicably resolved any issues regarding the changed grade in the alley and its effect on Heuer's access to his property.

PLAINTIFF'S EXHIBIT 7

Heuer argued that the fence removed Heuer's previously unfettered access to the alley from his lots. Heuer's evidence included that the gates did not function properly, they were at times strapped closed with heavy plastic straps, and at least once during a snowfall, snow had been plowed from JJP's property and piled up against the gates such that they could not be opened. Heuer also presented evidence that a truck could not travel from the alley through any of the gates in the fence without trespassing on JJP's property. Heuer's suit contained six counts, including trespass, adverse possession, unconstitutional taking, inverse condemnation, violation of the right to intrastate travel, and equal protection.

After a bench trial, the trial court found that the changes made to the alley by paving and constructing the fence were earned out in order to comply with the City's ordinances and storm water drainage requirements, and that the placement of the fence on the east side of the alley was correct under the City's ordinances. The trial court found that the fence provided no benefit to public health or safety. Additionally, the trial court found that the changes to the alley had generated neither an economic benefit to JJP nor an economic detriment to Heuer. The trial court acknowledged Heuer had diminished ac-

cess to the back portion of his lots due to the erection of the fence. However, the trial court concluded there had been no constitutional violation and found in favor of JJP and the City on all counts. This appeal follows.

### Standard of Review

Our review of a court-tried case is governed by the principles set forth by the Missouri Supreme Court in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We conclude a judgment is "against the weight of the evidence" only with caution and a firm belief that the judgment is wrong. *Id.*

### Discussion

■ Heuer raises two points on appeal. First, he argues that the trial court misapplied the City's buffer ordinance, re-sulting in violations of his constitutional rights. Second, Heuer argues that, should he prevail on appeal, he is entitled to his reasonable attorney's fees under 42 U.S.C. § 1988 (2006).[3]

### Point I

■ Heuer appeals the trial court's ruling on only one of the six counts of his petition; namely, his claim of inverse condemnation.[4] Underlying this claim is Heuer's argument that the City's ordinances were misapplied in this case, so we begin there. The trial court found that the fence was properly placed on the east side of the alley in order to comply with the City's ordinances. We disagree.

■ We interpret ordinances by their plain language, in view of the whole ordinance. *See State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann*, 64 S.W.3d 310, 312 (Mo. banc 2002) (interpret ordinance based on review of whole ordinance); *City*

3. The City moves to strike exhibits filed on appeal numbered 11, 35, and 43, because they were not admitted at trial, which Heuer concedes. Motion granted. The City further moves to strike any portion of Heuer's argument in reliance upon these exhibits. Heuer cites only two of the three disputed exhibits, and alongside these references in each instance is a citation to at least one other exhibit or document properly made part of the record on appeal. Thus, the City's motion to strike any portion of argument in Heuer's brief is denied.

The City also moves to strike City zoning ordinance 30–36 from the record on appeal because such ordinance was not admitted as evidence at trial. According to a long line of precedent, this Court may not take judicial notice of local ordinances. *City of St. Louis v. Fernbacher*, 449 S.W.2d 672, 673 (Mo.App. 1970). While we note such a rule "creates a conclusive presumption that the wandering vagrant who sojourns for a day in St. Louis knows more of its local laws than the court which, by its judgment, affords him rest and refreshment in the city prison," we are nevertheless bound to follow it. *City of St. Louis v. Young*, 248 Mo. 346, 154 S.W. 87, 87 (1913). Motion granted.

4. While Heuer clarifies in his reply brief that he intends to appeal the trial court's ruling on his claims of unconstitutional taking and equal protection as well, and while he quotes constitutional provisions saying private property may not be taken without compensation, both the argument sections of his initial brief and his reply brief focus on his contention that his right to access the alley was diminished without appropriate purpose under the City's police power and without compensation. This argument supports only his claim of inverse condemnation. Therefore, we limit our review to the trial court's ruling on that claim. *See Trustees of Green Trails Estates Subdiv. v. Marble*, 80 S.W.3d 841, 848 (Mo. App. E.D.2002) (stating rule that a party must develop contention in the argument section of brief; arguments omitted from an appellant's initial brief may not be supplied by a reply brief).

of *Bridgeton v. Titlemax of Mo., Inc.,* 292 S.W.3d 530, 536 (Mo.App. E.D.2009) (interpret plain language of ordinance). "[Z]oning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority." *Rice v. Bd. of Adjustment of Village of Bel–Ridge,* 804 S.W.2d 821, 823 (Mo.App. E.D.1991) (citations omitted).

■ The City's buffer ordinance applies when commercial property is developed "adjacent" to residential property. The trial court consulted Black's Law Dictionary and The New Oxford American Dictionary[5] to arrive at the conclusion that in this case, though JJP's and Heuer's properties are separated by an alley, they are still "adjacent" to one another. However, while dictionary definitions are instructive, the word "adjacent," when applied to land, must be defined in context of the facts, circumstances, and particular subject matter at issue. *City of St. Ann v. Spanos,* 490 S.W.2d 653, 656 (Mo.App.1973); *Nomath Hotel Co. v. Kansas City Gas. Co.,* 204 Mo.App. 214, 223 S.W. 975, 983 (1920).

■ Here, the buffer ordinance, after requiring a fence, states, "[t]he screen shall be installed on *the* lot line between the commercial or industrial lot and the residential lot." Section 30–42(e) (emphasis added). The plain language of this particular ordinance, when viewed as a whole, contemplates one lot line between the commercial lot and the residential lot for placement of the fence. This fact necessarily informs our interpretation, and it follows that the word "adjacent," in this ordinance, refers to properties sharing a common lot line. To interpret it otherwise, as applying to properties separated by an alley or street, would on the one hand require a party to erect a buffer fence, but on the other, make it impossible for that party to place the fence "on the lot line between the [two properties]" such that it complies with the plain language of the ordinance. This is an illogical result, and we decline to apply such interpretation here, even though it may be plausible when viewing only the dictionary definitions.[6] *See Peruque, LLC v. Shipman,* 352 S.W.3d 370, 374 (Mo.App. E.D.2011) (courts look beyond plain language when language would lead to illogical result). Rather, we find that because there is no common lot line between these two properties, the buffer ordinance by its plain language did not apply. Thus, both the City and the trial court erroneously applied it here.

■ Next, the use of the alley is fundamental to a determination of property rights in the alley, and thereby to the determination of Heuer's claim for inverse condemnation. The trial court found that the alley was the property of the City. While Heuer does not dispute this finding on appeal, we find the trial court's conclusion on this issue was erroneous, leading to a misapplication of the law on Heuer's

---

5. The trial court read the definitions into the transcript as follows. From Black's Law Dictionary, the trial court read the definition as "[l]ying near or close to, sometimes contiguous, neighboring." From The New Oxford American Dictionary, the trial court stated the definition was "[n]ext to or adjoining something else, as in adjacent rooms."

6. The City posited at oral arguments that because there was no common lot line, the City had discretion to determine where to place the fence. We see no authority for this proposition in the ordinance or elsewhere, and we view this interpretation, which grants discretion in an otherwise clear statement as to placement, as also producing an illogical result. This is true moreover in light of our strict construction of zoning ordinances in favor of property owners. *See Rice,* 804 S.W.2d at 823.

claims. Therefore, in the context of the above discussion of the City's ordinance and the particular circumstances of this case, we next review the trial court's analysis of the property rights present in the alley.

The trial court found that the time period for challenging the dedication of the alley to the City had long passed under Section 445.060, RSMo. (2000), and thus the alley was the property of the City and no action for taking could lie. However, dedication of an alley or street for a public purpose, whether accomplished by statute or by common law, does not accomplish a complete transfer of the fee-simple interest from the dedicators to the city. *Neil v. Indep. Realty Co.*, 317 Mo. 1235, 298 S.W. 363, 370–71 (1927) (statutory dedication); *see Connell v. Jersey Realty & Inv. Co.*, 352 Mo. 1122, 180 S.W.2d 49, 53 (1944) (common law dedication). Rather, in either case, the dedicators, and their successors in interest, retain a reversionary interest in the street or alley, subject to an easement for public use. *Neil*, 298 S.W. at 371.

In the case of statutory dedication, the easement is to the city, "in trust and for the uses ... named, expressed, or intended [in the recorded plat], and for no other use or purpose." Section 445.070, RSMo. (2010) [7]; *Neil*, 298 S.W. at 368 (applying statute). In a common law dedication, the easement is to the general public for public use. *Weakley v. State Highway Comm'n*, 364 S.W.2d 608, 612 (Mo.1963). In the event a city or the general public no longer uses a dedicated street or alley for the stated purpose or for the general public purpose (under statutory or common law dedication, respectively), the ownership of the street or alley reverts back to the abutting property owners, who each own the land abutting their property to the center of the roadway. *Neil*, 298 S.W. at 371. *See also Snoddy v. Bolen*, 122 Mo. 479, 24 S.W. 142, 146 (1893) (noting reversionary interest in case of abandoned street); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo.App.1960) (addressing vacation of streets and alleys).

Here, no party disputes proper dedication of the alley on appeal. While the trial court found the plat had been dedicated by statute, which the City maintains on appeal, there is no documentation of the dedication in the record on appeal, thus we are unable to discern the intended use of the alley as specified in the dedication. Rather, the trial court and the parties all assume a dedication for the general category of public use. Given the absence of dispute and the focus on public use on appeal, our pivotal question is whether the City's action in allowing erection of the fence conformed to the public use for which the plat was dedicated and for which an easement exists. We first analyze the public use of the alley, and then how that affects Heuer's claim of inverse condemnation. The trial court found that the public use of the alley was unchanged, but Heuer argues this conclusion is against the weight of the evidence. We agree with Heuer.

While substantial evidence was offered showing the alley remains available for use by members of the general public, it is not clear that the alley's primary purpose remains for public use. There was evidence offered by JJP that JJP uses the portion of the alley on its side of the fence to facilitate its business. Jeffrey Maurer, one of JJP's owners, testified that his business would be hindered if JJP was not permitted to use the alley as it does at present. The City Council resolution au-

7. This current statute is identical to the statute in effect in 1882, the year the plat containing the alley at issue here was recorded. Section 6573, RSMo. (1879).

thorizing placement of the fence stated that the west portion of the alley would be used as part of JJP's drive-through.

Furthermore, there was undisputed evidence that another city zoning ordinance required this commercially zoned property to have a rear yard 25 feet in length between the building and the lot line. Mr. Maurer testified that he believed JJP was given an exception to that particular requirement, but also stated that if JJP had to follow the ordinance, it would have been necessary to place the fence on the east side of the alley.[8] While the City's Board of Adjustment is authorized to allow exceptions to zoning ordinances by granting variances to particular property owners, Section 89.090, RSMo. (2010), there was no evidence JJP requested or received one here.

■■■ However, the City maintains the public use of the alley is unchanged. To bolster its view of the alley as remaining public in nature, the City points to the fact that sewer lines and power lines serving the public continue to run through the alley. While the operation of public utilities such as these do constitute one of the public uses for which a street or alley may be dedicated, *Johnson v. City of St. Louis*, 172 F. 31, 34 (8th Cir.1909), there is also precedent for distinguishing between the surface of the roadway and the space overhead or beneath the ground. *See generally Holland Realty & Power Co. v. City of St. Louis*, 282 Mo. 180, 221 S.W. 51 (1920) (citing cases). Furthermore, even if this new use of the alley is technically a public use, the City is not permitted to take land from one public use to devote to another public use if it will materially impair the previous use. *See State ex rel. Mo. Cities*

*Water Co. v. Hodge*, 878 S.W.2d 819, 822 (Mo. banc 1994) (condemnation case).

Here, while the drive-through is open to the public, the trial court also found that one prior use of the alley, access to the abutting properties, has been hindered. This finding was supported by substantial evidence. Heuer is now able to access the alley only through each gated opening in the fence. The evidence also showed that in order to access Heuer's property from the alley through one of the gates, a large vehicle would have to drive partially onto JJP's property in order to position itself to drive through the gate. On other occasions, Heuer's access was further hindered due to the presence of snow piled against the gate and heavy plastic ties holding the gate closed.

Given the particular circumstances here, while the public is free to use the portion of the alley west of the fence, and JJP does not object to other parties, including Heuer, driving onto its business property in order to utilize the alley for access to abutting properties and adjoining streets, it appears that this parcel of land has changed from solely a public alleyway, to a business drive-through that is incidentally open to the public. We find the City has allowed a change in the use of the alley, outside the scope of its easement, as it pertains to the surface of the alley.

■■■ In light of the foregoing context, we turn to a review of Heuer's specifically appealed claim. Inverse condemnation under Missouri law arises from article I, section 26 of the Missouri Constitution, which provides, "private property shall not be taken or damaged for public use without just compensation." In an inverse

---

8. The City declined to answer in oral argument whether JJP used the alley up to the fence in order to meet this 25–foot setback requirement, rather stating in general that

when such requirement applies, it is common for the City to allow property owners to extend their yards into the middle of an alley to comply with the setback ordinance.

condemnation action, a plaintiff may recover compensation even when his or her property has not been formally taken by a governmental entity. *See Schnuck Markets, Inc. v. City of Bridgeton,* 895 S.W.2d 163, 167 (Mo.App. E.D.1995). A plaintiff seeking this relief "must plead and prove an invasion or appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation directly and specially affects the landowner to his injury." *Id.* (internal quotations omitted).

■■■■■ Regardless of the ultimate ownership of a public alley, an owner abutting such alley has property rights in the entire alley not shared by the general public. *Christian v. City of St. Louis,* 127 Mo. 109, 29 S.W. 996, 997 (Mo.1895); *Dries v. City of St. Joseph,* 98 Mo.App. 611, 73 S.W. 723, 723 (1903). One of these is the right of ingress and egress. *Heinrich v. City of St. Louis,* 125 Mo. 424, 28 S.W. 626, 627 (1894); *Schrader v. QuikTrip Corp.,* 292 S.W.3d 453, 456 (Mo.App. E.D.2009). If this right is unreasonably or unlawfully restricted, an abutting owner may recover just compensation from the party causing the restricted access. *Schrader,* 292 S.W.3d at 456 (citing *Rude v. City of St. Louis,* 93 Mo. 408, 6 S.W. 257, 258 (1887)). The fact that an owner retains access to his or her property through other abutting streets or alleys does not defeat such an action, but rather simply affects the amount of damages to be awarded. *Heinrich,* 28 S.W. at 627.

As stated above, the trial court found Heuer's access to the alley had been hindered. Yet the trial concluded Heuer could not sustain his inverse condemnation action under this Court's decision in *Missouri Real Estate and Insurance Agency v. St. Louis County,* 959 S.W.2d 847 (Mo. App. E.D.1997). In it, this Court discussed the right of ingress and egress, which is "subject to reasonable restrictions under the police power of the State in protecting the public and in facilitating traffic flow." *Id.* at 849. In that context, this Court held, "[w]hen access to property is cut off in one direction by the closing of a street upon which it abuts but may be had in the other direction, the property is not taken or damaged." *Id.* at 850.

While this principle is true, it is also consistent with this Court's decision noted above in *Schrader,* focusing on the converse: The right of ingress and egress should not be subject to unreasonable or unlawful restrictions, even if access through other means remains. 292 S.W.3d at 456; *see also Heinrich,* 28 S.W. at 627. Therefore, the question is not whether access to the system of streets remained for Heuer, but whether the City's action in restricting access to Heuer's lots was unreasonable or unlawful. We have already established that the buffer ordinance the City relied on was inapplicable, but now examine whether despite this, the City's exercise of its police power here was reasonable.

■■■■■ A city's police power is expressly delegated from the State by statute, enabling a city to regulate in order to protect the public health, safety, and welfare. *See Miller v. City of Town & Country,* 62 S.W.3d 431, 437 (Mo.App. E.D. 2001). However, this power "is limited by: (1) the rights guaranteed by the Constitution, (2) the necessity of a legitimate public purpose, and (3) a reasonable exercise of the power." *City of Kansas City v. Jordan,* 174 S.W.3d 25, 41 (Mo.App. W.D. 2005) (citing *President Riverboat Casino— Mo., Inc. v. Mo. Gaming Comm'n,* 13 S.W.3d 635, 641 (Mo. banc 2000)). Specifically, the police power does not give license to circumvent a person's right to due process enumerated in the Fourteenth

Amendment. *Id.* at 42. The well-established meaning of procedural due process is that "parties whose rights are to be affected must be given notice and the opportunity to be heard." *Id.* (citing *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556(1972)).

The City at trial listed various purposes for requiring the fence in order to provide protection for residential neighbors from the commercial traffic and debris. The City Council authorized construction of the fence by passing a resolution allowing JJP to build the fence, noting the alley would be used as part of JJP's drive-through. We have already established the construction of the fence diminished Heuer's right of access to the alley. The City gave no notice the fence would be built, and no opportunity for the abutting property owners to be heard.

A valid city zoning ordinance has by definition met procedural due process requirements. Section 89.050, RSMo. (2010). However, without the mandate of a valid, applicable ordinance, the City did not have authority to act in a way that restricted Heuer's property rights without ensuring such proper due process.[9] *See id.; cf. City of Louisiana v. Branham,* 969 S.W.2d 332, 336 (Mo.App. E.D.1998) (noting due process requirements for enacting zoning ordinances, citing Section 89.050, RSMo. (1994)). Because the City did not authorize the fence pursuant to an applicable ordinance, nor notify Heuer that the fence

would be built and give Heuer an opportunity to be heard, the City's exercise of its police power did not meet the requirements of procedural due process.[10]

In sum, the City's requirement of the fence was due to a misapplication of its buffer ordinance to these properties. The public use of the alley has changed in that JJP now uses the alley as part of its drive-through and part of its yard in order to comply with the ordinance requiring a 25-foot rear yard. Finally, because the fence was not mandated by an applicable valid ordinance, and because the City provided no other notice to Heuer or opportunity to be heard, the City failed to ensure Heuer's procedural due process rights in the exercise of its police power. In light of these facts, we find that the City unreasonably restricted Heuer's right of access to the alley as an abutting property owner by approving the erection of the fence in its current location. *See Schrader,* 292 S.W.3d at 456. Such restriction amounts to inverse condemnation of Heuer's property. *See Schnuck Markets,* 895 S.W.2d at 167. Point granted.

### Remedy

■ Heuer argues the trial court should have ordered removal of the fence. Essentially, Heuer seeks the legal remedy of ejectment. In light of the circumstances here, we agree this remedy is proper.

9. This is consistent with the primary case relied on by the City, *Townes v. City of St. Louis,* 949 F.Supp. 731 (E.D.Mo.1996). There, in analyzing procedural due process, the court stated that no individualized notice is required when a city acts legislatively in a way that equally affects all those similarly situated. *Id.* at 737 (quoting *Foster v. Hughes,* 979 F.2d 130, 132 (8th Cir.1992)). Here, the City did not act legislatively, but chose to make a discretionary determination regarding placement of this particular fence in absence

of the ability to clearly apply the buffer ordinance.

10. The City did state at oral argument that had Heuer objected to the fence before it was built, the City would have listened and perhaps decided the issue differently. This confirms the necessity as well as the practicality of ensuring procedural due process in any exercise of police power.

Ordinarily, ejectment is a possessory remedy by an owner to recover premises unlawfully possessed by another. Section 524.010, RSMo. (2010); *Thomas v. Hunt*, 134 Mo. 392, 35 S.W. 581, 582 (1896). Where, as here, that land is subject to an easement for a public right of way, ejectment is only appropriate where the holder of the easement has taken the land in a way that restricts the owner's "right to use the land for all purposes not inconsistent with the grant." *Thomas*, 35 S.W. at 582. Further, an action for ejectment does not recover the land fully, but only restores the owner's right to use the land, subject to the public easement. *Id.* This remedy is more appropriate than a remedy for damages in that it abates the cause of the wrong and restores the property rights of the landowner. *Id.*

Here, as stated above, the dedication of the alley to the City resulted in an easement to the City for public use of the alley, and a reversionary interest to Heuer in the land to the center of the alley. *Id.* at 583; *Snoddy*, 24 S.W. at 146. Heuer also retained the right to full use of the alley in any way that does not conflict with the public use of the alley for which it was dedicated. *See Thomas*, 35 S.W. at 582. This includes the right of ingress and egress. Because the City unreasonably and unlawfully changed the use of the alley, thereby restricting Heuer's right of ingress and egress, Heuer is entitled to a restoration of his rights through ejectment; namely, removal of the fence. The east side of the alley remains Heuer's, subject to the easement for public use. *See id.*

### Point II

In Point II, Heuer requests nominal damages and attorney's fees under 42 U.S.C. § 1988(b). First, nominal damages are appropriate where a legal right has been violated but there is no evidence from which to ascertain the value of the damages. *Green v. Study*, 286 S.W.3d 236, 241–42 (Mo.App. S.D.2009); *Farer v. Benton*, 740 S.W.2d 676 (Mo.App. E.D.1987). *See also Curd v. Reaban*, 232 S.W.2d 389, 392 (Mo.1950) (prevailing party in ejectment suit entitled to nominal damages without other proof than right to possession). Heuer concedes he did not make the requisite showing to prove the amount of his damages for inverse condemnation, but because the City unreasonably violated his right to ingress and egress, we find he is entitled to nominal damages.

Second, attorney's fees are authorized under 42 U.S.C. § 1988(b) for prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In his petition, Heuer claimed a violation of 42 U.S.C. § 1983, through the City's inverse condemnation of his property. Claims brought under § 1983 are within the scope of § 1988(b). Thus, as a prevailing party on this claim, Heuer may recover his reasonable attorney's fees. Such reasonable fees are determined by the circumstances of the case, including the extent of a plaintiff's success on all claims, and the relatedness of the claims raised. *Hensley*, 461 U.S. at 433–37, 440, 103 S.Ct. 1933. Point granted.

### Conclusion

Because the City acted unreasonably by failing to conform to its ordinances, changing the use of the alley, and thereby restricting Heuer's ingress and egress to his property, the trial court erroneously applied the law to Heuer's claim of inverse condemnation. Heuer is entitled to ejectment of the fence and to nominal damages for inverse condemnation. Because Heuer is now a prevailing party on his § 1983

claim, he is entitled to reasonable attorney's fees under § 1988(b).

We reverse and remand to the trial court for a determination of Heuer's reasonable attorney's fees and to enter judgment in accordance with this opinion.

SHERRI B. SULLIVAN, and ROBERT M. CLAYTON, III, JJ., concur.